**Benjamin ARMSTRONG, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 03–96–00662–CR.**

Court of Appeals of Texas,
Austin.

March 26, 1998.

David H. Reynolds, Austin, for Appellant.

Ronald Earle, Dist. Atty., C. Bryan Case, Jr., Asst. Dist. Atty., Austin, for State.

Before CARROLL, C.J., and KIDD and DALLY, JJ.*

CARL E. DALLY, Justice (Retired).

Appellant Benjamin Armstrong was convicted of the offense of possession of cocaine. *See* Tex. Health & Safety Code Ann. § 481.115(c) (West Supp.1998). Pursuant to a plea bargain agreement, the trial court assessed appellant's punishment at imprisonment for ten years, suspended imposition of

---

\* Before Carl E.F. Dally, Judge (retired), Court of Criminal Appeals, sitting by assignment. *See*

sentence, and granted appellant community supervision.

In his sole point of error, appellant asserts that the trial court erred in failing to grant his motion to suppress evidence because the evidence was obtained from appellant as a result of his unlawful detention in violation of his constitutional and statutory rights. *See* U.S. Const. amends. IV, XIV; Tex. Const. art. I, § 9; Tex.Code Crim. Proc. Ann. art. 38.23 (West Supp.1998). We will overrule appellant's point of error and affirm the trial court's judgment.

We summarize the testimony adduced on the hearing of the motion to suppress. At about 5:30 p.m. on June 6, 1995, six City of Austin police officers and a Travis County deputy sheriff assigned to the Street Narcotics Unit, wearing their clearly marked "Class C uniforms," were driving around in an unmarked van "targeting street and open air markets around the City of Austin." The van was stopped in the 4500 Block of Little Hill Circle. Officer Mike Turner had worked undercover buying cocaine and testified this was "a very high dope area." He had made fifteen to twenty arrests in the block where they stopped. The officers saw a group of men "working on a car on the street." The officers, without any show of weapons, stepped out of the van. "We just pulled up there, and I believe the van door was already open, we just got out and—the way we do things, we get out and start checking people or talking to people, and you watch what they do. People that get real nervous are the ones you may want to talk to you. If nobody does anything or just, you know, they're real friendly, whatever, we just get back in the van and leave."

On this occasion Officer Turner noticed that appellant, who was standing in front of his own house next to a metal light pole between the sidewalk and the curb, "got real nervous" when the officers walked out of the van. "He suddenly just, you know, started looking down. He got kind of twitching around a little bit, and he had something in his hand and immediately just threw it down.

Tex. Gov't Code Ann. § 74.003(b) (West 1988).

It looked like a little piece of paper napkin or something. And he threw it down, and then made a real obvious step over to it and was standing on top of it. . . . So I walked over to him, and said, 'what's under your foot?' And he picked it up, and there was a paper towel. And inside—I picked it up, and inside this paper towel was nearly what we call a cookie of crack cocaine. . . . I don't believe [appellant] did anything. He just stood there. And I picked up the paper towel and figured out what it was, I put him in cuffs and took him over to the van."

A magistrate, sitting for the trial court, heard the evidence on the motion to suppress. In written findings the magistrate concluded that:

> The officers had reasonable suspicion to investigate at the scene. No one was ordered to stop nor was their movement interfered with. Upon investigation Officer Turner saw the defendant abandon an object and then step on it. In order to further his investigation and because he was reasonably suspect of possible criminal activity, in a high crime zone, he issued an order for the defendant to move his foot. No weapons were drawn and the defendant was not under detention. He voluntarily complied with the officer's directive. The officers discovered contraband and the defendant was arrested. The defendant was not unlawfully compelled to submit to lawful authority.

The trial court adopted the findings of the magistrate and refused to grant the motion to suppress.

■ In deciding appellant's contention that the cocaine was obtained as a result of his unlawful detention, we must determine whether appellant was detained, and in view of the facts, we must determine whether appellant voluntarily abandoned the cocaine he possessed. Appellant does not contend that the cocaine was obtained as a result of an unlawful arrest. The purpose of investigative detention is to establish a person's identity or to maintain the status quo while officers obtain more information. *See Comer v. State,* 754 S.W.2d 656, 657 (Tex.Crim.App. 1986). Although probable cause is not required to temporarily detain an individual,

specific, articulable facts must create a reasonable suspicion, in light of the officer's experience and knowledge and inferences from those facts that (1) some activity out of the ordinary is occurring or has occurred which warrants further investigation, (2) the detained person is connected to the unusual activity, and (3) the activity is related to crime. *See id.; Dean v. State,* 938 S.W.2d 764, 768–69 (Tex.App.—Houston [14th Dist.] 1997, no pet.).

■ When Officer Turner approached appellant, he did not have probable cause to arrest him or reasonable suspicion warranting an investigative detention. However, police and citizen encounters may occur when police do not have probable cause to arrest or reasonable suspicion to detain a citizen. A police officer may approach a citizen without probable cause or reasonable suspicion to ask a citizen questions or even to request a search. *See California v. Hodari D.,* 499 U.S. 621, 628, 111 S.Ct. 1547, 1551–52, 113 L.Ed.2d 690 (1991); *Johnson v. State,* 912 S.W.2d 227, 235 (Tex.Crim.App.1995); *State v. Shamsie,* 940 S.W.2d 223, 225 (Tex.App.—Austin 1997, no pet.). So long as the citizen to whom the officer puts the questions remains free to disregard the questions and walk away there is no detention and no intrusion upon the citizen's liberty or right of privacy implicating the Fourth Amendment. *See United States v. Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980); *Hawkins v. State,* 758 S.W.2d 255, 259 (Tex.Crim.App.1988). *"Mendenhall* established that the test for existence of a 'show of authority' is an objective one: not whether the citizen perceived that he was being ordered or restrained of his movement, but whether the officer's words and actions would have conveyed that to a reasonable person." *Hodari D,* 499 U.S. at 628, 111 S.Ct. at 1551; *see Michigan v. Chesternut,* 486 U.S. 567, 573, 108 S.Ct. 1975, 1979, 100 L.Ed.2d 565 (1988).

■ Officer Turner approached appellant merely to question him. Before Turner asked any questions of, or detained appellant, appellant threw to the ground the cocaine in his possession. We must determine whether appellant's throwing the cocaine to the

ground was a voluntary abandonment of the contraband. If appellant voluntarily abandoned the contraband, he was not entitled to constitutional and statutory search and seizure protection because the Fourth Amendment does not protect a person who voluntarily abandons his property. *See Abel v. United States,* 362 U.S. 217, 241, 80 S.Ct. 683, 698, 4 L.Ed.2d 668 (1960); *Hester v. United States,* 265 U.S. 57, 58, 44 S.Ct. 445, 446, 68 L.Ed. 898 (1924); *United States v. Barlow,* 17 F.3d 85, 88 (5th Cir.1994). "The test for determining when an object has been abandoned is one of intent, which 'may be inferred from words spoken, acts done, and other objective facts.' [*U.S. v.*] *Colbert,* 474 F.2d [174] at 176 [(5th Cir.1973)]. The accused need not have abandoned the searched item in the strict property sense, where an intent to relinquish ownership must be shown; merely an intent voluntarily to relinquish his privacy interest is sufficient." *Id.; see Hawkins,* 758 S.W.2d at 258; 1 Wayne R. LaFave, *Search and Seizure* § 2.6(b) (3d ed.1996). Even though a person may have a subjective intent to regain possession of his property, if he places or throws it into an area open to the public he has abandoned his property for search and seizure purposes. *See United States v. Rem,* 984 F.2d 806, 810 (7th Cir.1993); *United States v. Ramos,* 960 F.2d 1065, 1067 (D.C.Cir.1992); *United States v. Thomas,* 864 F.2d 843, 846 n. 5 (D.C.Cir.1989).

 Voluntary abandonment of property occurs if (1) the defendant intended to abandon the property, and (2) his decision to abandon the property was not due to police misconduct. *Brimage v. State,* 918 S.W.2d 466, 507 (Tex.Crim.App.1996); *Hawkins,* 758 S.W.2d at 258; *Comer,* 754 S.W.2d at 659. Even though Officer Turner did not have probable cause to arrest appellant or reasonable suspicion to detain him, it was lawful for Turner to approach and attempt to talk to appellant. When Officer Turner was merely approaching and had not yet talked to appellant, appellant relinquished his possession and privacy interest in the contraband by throwing it to the ground. In these circumstances, appellant's decision to throw his property to the ground was not due to police misconduct. Therefore, appellant voluntarily

abandoned the cocaine. Even though appellant stepped on and attempted to conceal the cocaine and may have intended to regain possession of it, the abandonment of the cocaine was complete when appellant threw it to the ground. Because appellant had not been detained or arrested before he abandoned the cocaine, his constitutional and statutory protection against unlawful search and seizure were not violated.

In our independent de novo review of the record, *see Guzman v. State,* 955 S.W.2d 85, 87–88 (Tex.Crim.App.1997), we find that the trial court did not err in refusing to grant appellant's motion to suppress evidence. Appellant's point of error is overruled.

The judgment is affirmed.

CARROLL, C.J., not participating.