TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-98-00613-CR







James Hollingsworth, Appellant



v.



The State of Texas, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT


NO. 981932, HONORABLE FRED A. MOORE, JUDGE PRESIDING







 A jury found appellant James Hollingsworth guilty of tampering with physical
evidence and possession of a controlled substance, cocaine, in an amount of less than one gram. 
See Tex. Penal Code Ann. § 37.09 (West Supp. 2000); Tex. Health & Safety Code Ann.
§ 481.115(b) (West Supp. 2000). Upon the jury's assessment of punishment, the district court
sentenced appellant to four years' confinement in the Texas Department of Criminal Justice
Institutional Division for tampering with physical evidence (1) and two years' confinement in a state
jail facility for possessing cocaine. Appellant presents seven points of error on appeal. We will
affirm in part, and reverse and render in part.



BACKGROUND

 In the late afternoon of March 7, 1998, Officer Kenneth Koch of the Austin Police
Department (APD) received a radio call reporting a knife fight in the 1600 block of East Third
Street between a black male and a white male. (2) Koch is familiar with this area and described it
as a "high crime, high drug trafficking" area. Koch, who was in his patrol car when the call
came in, went to the location. When Koch arrived, he observed appellant, a white male, walking
northbound on Chalmers Avenue, heading toward the 1600 block of East Fourth Street. Koch
testified he approached appellant because he believed appellant might have been involved in the
fight. His belief was based on the man's location and a physical description. (3) Appellant displayed
no signs that he had been in a fight, and Koch did not see a knife or any other weapon on
appellant. 

 Koch followed appellant in his marked patrol car at a slow rate of speed, trying to
catch up with appellant. According to Koch, when appellant saw the police car, he started
walking away at a faster pace. Koch testified this "raised [his] suspicions" that appellant was
involved in some kind of illegal activity. When appellant began to walk down East Fourth, Koch
stopped and exited his vehicle, asking appellant to stop. Appellant kept walking. Koch again
asked appellant to stop. Appellant turned and looked at Koch but continued to walk away. At
this point, appellant was walking on the sidewalk. There was a dumpster between the sidewalk
and the street. Appellant "made a quick furtive movement towards the dumpster." Koch testified
that he saw appellant "making a motion with his tongue in his mouth." Koch saw appellant duck
his head and shoulder behind the dumpster and emerge a few seconds later. Koch was about
twenty feet away from appellant at this time and had not physically restrained him. Koch testified
that appellant had not stopped when appellant ducked behind the dumpster. 

 At about the time Koch exited his vehicle, Austin Police Officer Gregory White
arrived on the scene. White was about ten feet in front of appellant and saw the events unfold. 
White's testimony corroborated Koch's, but more significantly, White was able to see appellant
when appellant ducked behind the dumpster. White testified that appellant spit out two off-white,
cube-shaped objects, which he suspected might be crack cocaine. At the time appellant spit out
the objects, White was about ten feet in front of appellant, Koch was about twenty feet behind
appellant, and appellant was located between a building and the dumpster.

 After appellant emerged from behind the dumpster, Koch approached appellant,
grabbed his jacket, and when appellant resisted, grabbed appellant from behind. They both fell
to the ground, and appellant was placed in custody. Koch testified that appellant was being
detained at this point to investigate the fighting incident. White then informed Koch that he had
seen appellant spit out crack cocaine when he ducked behind the dumpster. Both officers testified
that it is common for people to carry crack cocaine in their mouths to avoid its being detected. 

 Appellant was arrested for possession of a controlled substance. White seized two
cube-shaped objects from the ground near the dumpster. White testified that the objects were
"shiny looking" and appeared to be wet, suggesting they had been in someone's mouth because
the ground was not wet at that time. Laboratory tests later confirmed that the substance was
cocaine. Appellant denied that the cocaine was his or that he "ducked" behind the dumpster. He
maintains that he was merely walking around the dumpster and White must have seen him spit
Copenhagen tobacco.

 Appellant filed a motion to suppress the cocaine claiming that the "arrest and search
of [appellant] and the seizure of items . . . was effected without valid warrant, or probable cause,
or reasonable suspicion, in violation of the Fourth and Fourteenth Amendments to the United
States Constitution, Article I § 9 of the Texas Constitution, Article 38.23 of the Texas Code of
Criminal Procedure, and Chapter 14 of the Texas Code of Criminal Procedure." (4) Following a
hearing, a magistrate denied the motion and made findings and conclusions, all of which were
adopted by the district court.

 On October 5, 1998, appellant was tried to a jury, which found him guilty of
tampering with physical evidence and possession of less than one gram of cocaine. See Tex.
Penal Code Ann. § 37.09; Tex. Health & Safety Code Ann. § 481.115(b). The district court
assessed punishment at four and two years, respectively. In seven points of error appellant
complains of both convictions and his punishment.

DISCUSSION

The Legality of the Seizure

 In his first point of error, appellant complains that the district court erred in
overruling appellant's motion to suppress because the evidence used against him was seized as a
result of an illegal stop or detention. Specifically, appellant argues that his detention was based
on a mistake and that the officer had no reasonable suspicion that appellant committed a crime or
was about to commit a crime. The State responds by arguing that (1) appellant does not have
standing to contest the seizure since he denied any possessory interest in the cocaine; (2) appellant
has waived several of his arguments because he did not make them to the district court; and (3)
if this Court reaches the merits of appellant's claims, then under California v. Hodari D., 499
U.S. 621 (1991), and Johnson v. State, 912 S.W.2d 227 (Tex. Crim. App. 1995), appellant
voluntarily abandoned the cocaine and thus there was no illegal seizure. Assuming without
deciding that appellant has standing to challenge the seizure, we conclude that appellant has
preserved his arguments but voluntarily abandoned the cocaine.

 The appropriate standard for reviewing a trial court's ruling on a motion to
suppress evidence has recently been clarified: as a general rule, appellate courts should give
almost total deference to the trial court's determination of the historical facts that the record
supports, especially when the trial court's fact findings are based on evaluations of credibility and
demeanor. See Carmouche v. State, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); Guzman v.
State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). However, an appellate court should review
de novo the trial court's application of search-and-seizure law. See Carmouche, 10 S.W.3d at 327
(citing Guzman, 955 S.W.2d at 88-89). Thus, we will take the officers' version of the events as
true and determine whether the cocaine was legally seized. See id.

 We will assume for the sake of argument that when Koch approached appellant,
he did not have reasonable suspicion warranting an investigative detention. See Comer v. State,
754 S.W.2d 656, 657 (Tex. Crim. App. 1986) (to temporarily detain individual, officer must have
specific, articulable facts that create reasonable suspicion that individual is connected with
criminal activity warranting further investigation). However, police and citizen encounters may
occur when police do not have probable cause or reasonable suspicion to detain a citizen. See
Armstrong v. State, 966 S.W.2d 150, 152 (Tex. App.--Austin 1998, no pet.). A police officer may
approach a citizen without probable cause or reasonable suspicion to ask questions or even to
request a search. See Hodari D., 499 U.S. at 628; Johnson, 912 S.W.2d at 235; Armstrong, 966
S.W.2d at 152. As long as the citizen to whom the officer puts the question remains free to
disregard the question and walk away, there is no detention and no intrusion upon the citizen's
liberty or right of privacy implicating the Fourth Amendment. See United States v. Mendenhall,
446 U.S. 544, 544 (1980); Hawkins v. State, 758 S.W.2d 255, 259 (Tex. Crim. App. 1988);
Armstrong, 966 S.W.2d at 152.

 Koch approached appellant to question him and determine whether he had been
involved in the reported fight. At this point, there was no detention and no intrusion upon
appellant's liberty or right of privacy. See Mendenhall, 446 U.S. at 544; Hawkins, 758 S.W.2d
at 259; Armstrong, 966 S.W.2d at 152. Before Koch physically detained appellant, appellant spit
out the cocaine. Appellant argues that he was seized before he spit out the cocaine. Appellant
asserts that either (1) he had complied with the police order to stop before he spit out the cocaine;
or (2) he was seized when, based on the surrounding circumstances, he reasonably felt that he was
not free to leave because he was "blocked in" by the police officers.

 In Hodari D. the United States Supreme Court clarified the definition of "seizure": 
under the Fourth Amendment, a seizure occurs when the suspect has yielded to authority. See
Hodari D., 499 U.S. at 626. The Texas Court of Criminal Appeals has adopted the Hodari D.
test for purposes of article one, section nine of the Texas Constitution. See Johnson, 912 S.W.2d
at 236. Thus, under both the United States and Texas Constitutions, "the seizure of the citizen
has not occurred until a reasonable person would believe he or she was not free to leave, and that
person has yielded to the officer's show of authority or been physically forced to yield." Johnson,
912 S.W.2d at 236 (overruling previous definition of seizure that required only that reasonable
person believe he or she is not free to leave) (emphasis added); see also State v. Shamsie, 940
S.W.2d 223, 225 (Tex. App.--Austin 1997, no pet.) (explaining that Johnson abandoned previous
test for seizure and adopted Hodari D. test), overruled on other grounds, Woods v. State, 956
S.W.2d 33 (Tex. Crim. App. 1997).

 Appellant argues under his first and sixth points of error that the test for whether
a seizure has occurred is whether "there has been such a display of official authority that a
reasonable person would not have felt that he was free to leave." Appellant relies on INS v.
Delgado, 466 U.S. 210 (1984); United States v. Mendenhall, 446 U.S. 544 (1980); Terry v. Ohio,
392 U.S. 1 (1968); Chambers v. State, 866 S.W.2d 9 (Tex. Crim. App. 1993); and Nottingham
v. State, 908 S.W.2d 585 (Tex. App.--Austin 1995, no pet.). Appellant correctly argues that the
United States Supreme Court did not explicitly overrule Delgado, Mendenhall, and Terry in
Hodari D. However, the Court stated that the test announced in Hodari D. was not contrary to
the earlier cases. See Hodari D., 499 U.S. at 627-28. Thus, the definition of seizure for
purposes of both the United States and Texas Constitutions is as announced in Hodari D. See
Hodari D., 499 U.S. at 626; Johnson, 912 S.W.2d at 236; Shamsie, 940 S.W.2d at 225. (5)

 In his sixth point of error, appellant complains that the district court incorrectly
instructed the jury on the definition of "detained" and "seized." Because the jury instruction
follows Johnson, 912 S.W.2d at 236, we overrule appellant's sixth point of error.

 Appellant was not seized before he spit out the cocaine because Koch had not
physically restrained appellant nor had appellant yielded to the officer's show of authority. Koch
and White both testified that appellant was walking away from Koch at the time he spit out the
cocaine. It is only after he spit the cocaine out that appellant responded to Koch's calls and began
walking toward the officer. Appellant points out that, unlike the defendant in Hodari D. who
continued to run after he dropped the cocaine, appellant did not likewise continue to run and
instead turned to approach Koch. In Hodari D., however, the defendant was "tackled" only a
"moment" after tossing away the cocaine. See 499 U.S. at 623. The inquiry centers on whether
the defendant was seized "at the time he dropped the drugs." See id. (emphasis added). Here,
appellant had not submitted to police authority at the time he spit out the cocaine; what he did
after he spit out the cocaine is not relevant. 

 We next determine whether appellant voluntarily abandoned the cocaine. If he
voluntarily abandoned the contraband, he was not entitled to constitutional and statutory search-and-seizure protection because the Fourth Amendment does not protect a person who voluntarily
abandons property. See Abel v. United States, 362 U.S. 217, 241 (1960); Armstrong, 966 S.W.2d
at 153. When police take possession of abandoned property, no seizure under the Fourth
Amendment occurs. See Hawkins, 758 S.W.2d at 257; Franklin v. State, 913 S.W.2d 234, 240
(Tex. App.--Beaumont 1995, pet. ref'd). Voluntary abandonment of property occurs if (1) the
accused intended to abandon the property and (2) the accused's decision to abandon the property
was not due to police misconduct. See Brimage v. State, 918 S.W.2d 466, 507 (Tex. Crim. App.
1996); Armstrong, 966 S.W.2d at 153. 

 When appellant spit out the cocaine, he clearly intended to abandon it, and
appellant does not claim otherwise. The only issue is whether his decision to abandon the
property was the result of police misconduct. Appellant claims that the abandonment was the
result of police misconduct because the police stopped him without reasonable suspicion. (6) 
However, at the time he spit out the cocaine, appellant had neither been stopped, detained, nor
seized by the police. Koch had simply approached appellant and asked him to stop. This is a
permissible citizen-police encounter. See Hodari D., 499 U.S. 628; Johnson, 912 S.W.2d at 235. 
Thus, we hold that appellant voluntarily abandoned the cocaine and therefore cannot claim
protection under constitutional and statutory search-and-seizure law. See Hodari D., 499 U.S.
629; Armstrong, 966 S.W.2d at 153 (both finding voluntary abandonment under similar facts).

 Appellant also argues that the seized evidence is inadmissible under article 38.23
of the code of criminal procedure (West Supp. 2000). (7) Appellant argues that article 38.23
provides broader protection from searches and seizures than does either the United States or Texas
Constitution. Article 38.23 provides: "No evidence obtained by an officer . . . in violation of
any provisions of the Constitution or laws of the State of Texas . . . or of the United States of
America[] shall be admitted in evidence." Tex. Code Crim. Proc. Ann. art. 38.23(a). Appellant
contends that article 38.23 does not recognize the "'abandonment exception' to the 4th
Amendment." Appellant cites no case for this proposition and offers no analysis as to why this
should be the law. We find no merit to appellant's argument. Appellant claims that the police
violated a law by stopping him without reasonable suspicion. We have held, however, that the
police did not violate any law when they approached appellant. (8)

 Having determined that appellant was not seized when he spit out the cocaine and
that he voluntarily abandoned the cocaine, we overrule appellant's first point of error.

Tampering with Evidence

 In his second and third points of error, appellant argues that the evidence is legally
and factually insufficient to support his conviction for tampering with physical evidence.


(a) A person commits an offense if, knowing that an investigation or official
proceeding is pending or in progress, he:


 (1) alters, destroys, or conceals any record, document, or thing with intent to
impair its verity, legibility, or availability as evidence in the investigation or
official proceeding; . . . .


 . . . .


(d) A person commits an offense if the person:


 (1) knowing that an offense has been committed, alters, destroys, or conceals
any record, document, or thing with intent to impair its verity, legibility, or
availability as evidence in any subsequent investigation of or official proceeding
related to the offense; . . . .



Tex. Penal Code Ann. § 37.09 (West Supp. 2000). 

 Appellant argues that there is no, or in the alternative, insufficient, evidence to
show that (1) appellant knew an investigation was in progress and (2) appellant concealed any
evidence. Although appellant was indicted under both theories of tampering (i.e., both knowing
an investigation was ongoing and knowing an offense had been committed), the State abandoned
the investigation theory before trial and proceeded only under the theory that appellant knew an
offense had been committed. (9) The jury was charged only with the second theory. The State thus
was not required to prove that appellant knew an investigation was in progress. We find no merit
in appellant's first argument and overrule appellant's second and third points of error to the extent
they complain that the State failed to produce legally and factually sufficient evidence that
appellant knew an investigation was in progress.

 Appellant also asserts that there is legally insufficient evidence to show that he
concealed any evidence. To determine the legal sufficiency of the evidence to support a criminal
conviction, we must decide whether the evidence could reasonably support a finding of guilt
beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 318-19 (1979); Griffin v.
State, 614 S.W.2d 155, 159 (Tex. Crim. App. 1981). The relevant question is whether, after
viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could
have found the essential elements of the crime beyond a reasonable doubt. See Jackson, 443 U.S.
at 318-19; Griffin, 614 S.W.2d at 159.

 The evidence viewed in the light most favorable to the prosecution is as follows. 
Both officers testified that it is very common to carry cocaine in the mouth. White testified that


subjects often conceal crack cocaine in their mouth to avoid being detected. When
[appellant] made the furtive movements, almost running away from Officer Koch,
dipping behind the dumpster, I saw the two objects fly out of his mouth, land on
the ground where there's nothing else. . . . Subjects spit out cocaine. I recognize
the behavior and the consistencies with other behavior I have seen and told this to
Officer Koch.



 The State argues that this is legally sufficient evidence of concealment and points
out that the jury could also infer guilt from appellant's flight. The statute does not define
"conceal," and we could locate no authority, nor was any cited to us, that explains "conceal"
under section 37.09. (10) The State offered and the district court admitted into evidence, without
objection from appellant, a dictionary definition of "conceal": "To hide or keep from
observation, discovery, or understanding; keep secret."

 Under section 37.09, appellant must have concealed the cocaine with the intent to
impair its availability as evidence in some kind of investigation. See Tex. Penal Code Ann.
§ 37.09. There is no evidence in the record that appellant was carrying cocaine in his mouth to
impair its availability as evidence. On the contrary, the evidence shows that appellant was
carrying cocaine in his mouth because that is how crack cocaine is commonly carried, undoubtedly
to keep it from public view. Just as one is not guilty of tampering with evidence by carrying keys
to a stolen car in one's pocket, so too is one not guilty of tampering with evidence by carrying
crack cocaine in the mouth. Under these facts, we see no difference between appellant's carrying
the contraband in his mouth or in his pocket. There is no evidence that appellant saw the police
officers and then put the evidence into his mouth in order to hide it from them. Appellant spit out
the cocaine, thus exposing it to view. In fact, White saw him spit it out. Under these facts, we
hold that the evidence is legally insufficient to support a conviction under section 37.09. We
sustain appellant's second point of error to the extent it complains there is legally insufficient
evidence of concealment, reverse the judgment of conviction under section 37.09 of the Texas
Penal Code, and render a judgment of acquittal. See Burks v. United States, 437 U.S. 1, 17-18
(1978); Greene v. Massey, 437 U.S. 19, 24 (1978). (11) 


Failure to Appoint a DNA Expert

 In his seventh point of error, appellant argues that the district court erred in
denying his "Motion for the Appointment of an Expert Witness." Appellant's motion claims that
he is entitled to "funds for the D.N.A. analysis of the evidence in the possession of the State and,
if necessary, for expert testimony pursuant to Article 26.05 Section 1(d), Code of Criminal
Procedure." Before the district court, appellant, relying on a conversation between his attorney
and a DNA expert, asserted that it would be possible to take "'swabs' of the rock cocaine and
compare the biological material on the cocaine, if any, with [appellant's] biological material." 
Appellant argues that since there was evidence that the area in which the defendant was arrested
was a high crime area, "it can reasonably be questioned whether the contraband seized by the
officers was previously present on the ground prior to the seizure of [appellant]." On appeal
appellant suggests that under Ake v. Oklahoma, 470 U.S. 68 (1985), and its progeny (12) he was
entitled to the appointment of an expert.

 The State responds that since Ake is based on federal constitutional principles,
appellant "has not preserved [this] error for review" because he "made no due process argument
in his motion or before the trial court." In the alternative, the State argues that there was no
error. Assuming without deciding that appellant has preserved his argument, we agree with the
State that the district court did not err in failing to appoint a DNA expert.

 "The appointment of an expert witness under Art. 26.05 . . . rests within the sound
discretion of the trial court." Stoker v. State, 788 S.W.2d 1, 16 (Tex. Crim. App. 1989); see also
De Freece v. State, 848 S.W.2d 150, 161 (Tex. Crim. App. 1993) (any failure to appoint expert
under article 26.05 is subject to abuse of discretion standard). We may reverse the trial court's
decision for an abuse of discretion only when it appears that the court applied an erroneous legal
standard, or when no reasonable view of the record could support the trial court's conclusion
under the correct law and the facts viewed in the light most favorable to its legal conclusion. See
Dubose v. State, 915 S.W.2d 493, 497-98 (Tex. Crim. App. 1996). Even if we would have
reached a different result, we should not intercede as long as the trial court's ruling was within
the "zone of reasonable disagreement." Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim.
App. 1991).

 Ake v. Oklahoma held that "when a defendant demonstrates to the trial judge that
his sanity at the time of the offense is to be a significant factor at trial, the State must, at a
minimum, assure the defendant access to a competent psychiatrist who will conduct an appropriate
examination and assist in evaluation, preparation, and presentation of the defense." 470 U.S. at
83. The court of criminal appeals has extended the reasoning in Ake to cases involving various
types of experts. See, e.g., Rey v. State, 897 S.W.2d 333 (Tex. Crim. App. 1995) (pathologist
in capital murder case); McBride v. State, 838 S.W.2d 248 (Tex. Crim. App. 1992) (chemist in
controlled substance case). The court has indicated that the defendant must make a "preliminary
showing of a significant issue of fact on which the State would present expert testimony, and which
the knowledge of a lay jury would not be expected to encompass." Jackson v. State, 992 S.W.2d
469, 474 (Tex. Crim. App. 1999) (emphasis added).

 Here, although the State called an expert to testify that the substance found was in
fact cocaine, the State did not present any expert testimony regarding the DNA matter on the
cocaine. "There is no error in refusing to appoint an expert witness to assist an indigent
defendant in rebutting a type of expert opinion that the State's witness did not present." Id.
(citing Griffith v. State, 983 S.W.2d 282 (Tex. Crim. App. 1998)). The State chose to proceed
to the jury with White's testimony that he actually saw the cocaine come out of appellant's mouth. 
The issue was the credibility of two witnesses (White and appellant, who testified he spit out
Copenhagen), and this is "precisely the kind of issue on which courts routinely turn to lay juries
for resolution." Id. We hold that the district court did not abuse his discretion in denying
appellant's motion to appoint a DNA expert and thus overrule appellant's seventh point of error. 
See id. (appellant not entitled to appointment of expert when he made no showing of significant
fact issue on which State would present expert testimony and issue before jury was one of
credibility).


Statements Made in Closing Argument

 In his fourth point of error, appellant argues that the district court erred in
overruling appellant's objection to a statement made in the State's closing argument. Appellant
asserts that the statement injected new evidence or facts into the trial. The State responds that the
statement was permissible as a response to opposing counsel's argument. See Lagrone v. State,
942 S.W.2d 602, 619 (Tex. Crim. App. 1997). 

 In his closing argument, appellant stated:



 Remember the chemist? Very nice gentleman. If this cocaine was in
someone's mouth, could you have taken the biological material off that? Could
you have compared it to the defendant[']s? Yes, sir. Would it have conclusively
shown one way or the other? Very likely, sir.


 Why didn't they do it? Who has the burden? Whose responsibility is it? 
That is one thing that would have taken all of these three days away. One thing. 
We know the test was available. DPS, they will do the test. All you have to do
is take it over there.


 . . . . 


 . . . [I]f the State holds the burden of proof in this case, why did they
ignore a test that would have established, conclusively established, guilt or
innocence. I submit to you that is an important question. Aren't you, as a juror,
entitled to that type of evidence? Wouldn't you have wanted it? 



The State responded in its closing argument:


 DNA. Why didn't the State do DNA in this case, analyze the rock to
compare the possible saliva on the rock to [appellant's]? I decided not to. I
decided not to spend your tax dollars to get DPS to analyze the rocks in this two-rock cocaine case. And I have --


 [APPELLANT'S COUNSEL]: Objection. Argument is outside the record,
your Honor.


 THE COURT: It's overruled. Please continue. It's in response to your
closing argument, sir.


 [THE STATE]: When I have two credible officers with no reason to lie
telling you what happened, compared to this incredible story from [appellant], I am
not going to spend your tax dollars and tell DPS to put aside your rape kits, put
aside your murder evidence, do a DNA analysis on these two rocks to be fair to
[appellant].



Appellant objected to only the first portion of the State's remarks; thus, we will consider only
whether the first portion of the State's argument was improper. See Tex. R. App. P. 33.1. 

 "'The invited argument rule permits prosecutorial argument outside the record in
response to defense argument which goes outside the record. However, a prosecutor may not
stray beyond the scope of the invitation.'" Bush v. State, 773 S.W.2d 297, 301 (Tex. Crim. App.
1989) (quoting Johnson v. State, 611 S.W.2d 649, 650 (Tex. Crim. App. 1981)) (citations
omitted). Here, appellant's argument was based on the evidence presented at trial (that a DNA
test could have been done but was not and most likely would have indicated whether the cocaine
came from appellant's mouth). The State, however, went outside the record in its argument and
stated that the reason the test was not done was because the prosecutor did not want to waste
taxpayers' money on "this two-rock case." The invited-argument rule does not protect statements
that go outside the record in response to argument based on the evidence. See id. (improper
argument occurred when, in response to defendant's argument based on evidence presented,
State's argument went outside record). We hold that the State's remarks during its closing
statement were improper and it was error for the judge to have overruled appellant's objection. 
However, this conclusion does not end our analysis.

 "An improper argument constitutes reversible error when in light of the record as
a whole it was extreme or manifestly improper, violative of a mandatory statute, or injected new
facts harmful to the accused into the trial proceedings." Borjan v. State, 787 S.W.2d 53, 57
(Tex. Crim. App. 1990); see Poole v. State, 974 S.W.2d 892, 904 (Tex. App.--Austin 1998, no
pet.). Whether or not there is reversible error depends upon an evaluation of the argument in
light of the entire record and the probable impact the statements may have had upon the minds of
the jurors. See Hernandez v. State, 819 S.W.2d 806, 820 (Tex. Crim. App. 1991); Poole, 974
S.W.2d at 904.

 After reviewing the entire record, we conclude that the improper statement does
not satisfy this test. The prosecutor's statement that he decided not to perform a DNA analysis
on the cocaine due to cost does not suggest that appellant possessed the cocaine; thus, we hold that
the improper argument does not constitute reversible error. Under the particular facts of this case,
the reason the prosecutor did not perform the DNA test most likely had little impact in the jurors'
minds when they were deciding whether appellant possessed cocaine. We overrule appellant's
fourth point of error because the improper argument does not constitute reversible error.


Testimony at Punishment Phase

 In his fifth point of error, appellant argues that during the punishment phase of
trial, the district court erred in allowing a witness, Tiffany Roper, to testify about her opinion of
appellant when her opinion was "not based upon a community observation or talking to people
in the community." Roper, a Travis County assistant district attorney who represents Child
Protective Services, became familiar with appellant through two separate investigations. Based
solely on her work experience, Roper testified that she had a poor opinion of appellant's character
for being peaceful and law-abiding. The district court, at appellant's urging, refused to allow
Roper to testify about the specifics of her investigations of appellant. 


 Rule 405(a) provides, in part:


 In all cases in which evidence of a person's character . . . is admissible,
proof may be made by testimony as to reputation or by testimony in the form of
an opinion. In a criminal case, to be qualified to testify at the guilt stage of trial
concerning the character . . . of an accused, a witness must have been familiar with
the reputation, or with the underlying facts or information upon which the opinion
is based, prior to the day of the offense.


Tex. R. Evid. 405(a). There is no dispute that Roper's opinion is based on facts that occurred
prior to the day of the offense. The issue is the proper predicate for Roper's testimony. (13) 
"Conceptually, different predicates are required for reputation and opinion testimony." Calderon
v. State, 950 S.W.2d 121, 131 (Tex. App.--El Paso 1997, no pet.). Roper testified to her opinion
of appellant's character. To be qualified to testify, Roper must be familiar with the underlying
facts or information upon which her opinion was based. See Ibarra v. State, No. 72,974, slip op.
at 17-18 (Tex. Crim. App. Oct. 20, 1999). The State was not required to show that Roper's
opinion was "based upon a community observation or talking to people in the community." 
Appellant's fifth point of error is overruled.


CONCLUSION

 Having overruled all of appellant's points of error related to his conviction for
possession of a controlled substance, we affirm that conviction. Having sustained appellant's
point of error complaining of the legal sufficiency of the evidence on his conviction for tampering
with physical evidence, we reverse that conviction and render a judgment of acquittal.


 

 

 Lee Yeakel, Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Yeakel

Affirmed in Part; Reversed and Rendered in Part

Filed: March 30, 2000

Publish
1. Appellant's punishment was enhanced by four prior felony convictions.
2. Koch was later joined by Officer Gregory White. Both officers' versions of events are
taken from their testimony at the suppression hearing, which appellant and this Court agree is
substantially similar to the officers' testimony at trial.
3. Koch testified that appellant matched the dispatch description of a white male wearing
jeans and a jacket. However, the transcript of the dispatch report indicates that there was no
description of the clothing that the white male was wearing and instead reported that the black
male was wearing a jacket. Koch admitted that he must have confused the clothing description
of the two men although he maintained that it is his independent recollection that the white man
was described as wearing a jacket.
4. Appellant makes no mention of chapter 14 of the Texas Code of Criminal Procedure in his
brief to this Court other than to say it was one of the grounds on which he urged his motion to
suppress. Because appellant makes no separate argument regarding the applicability of chapter
14, it is not before us and we will not discuss this portion of his motion. See infra pp. 5-10.
5. Chambers and Nottingham preceded Johnson. See Chambers v. State, 866 S.W.2d 9 (Tex.
Crim. App. 1993); Nottingham v. State, 908 S.W.2d 585 (Tex. App.--Austin 1995, no pet.). We
will follow Johnson as we did in Shamsie. See State v. Shamsie, 940 S.W.2d 223, 225 (Tex.
App.--Austin 1997, no pet.), overruled on other grounds, Woods v. State, 956 S.W.2d 33 (Tex.
Crim. App. 1997).
6. The State argues that appellant has not preserved this argument for appeal because
appellant never explicitly argued that he abandoned the cocaine as a result of police misconduct. 
See Tex. R. App. P. 33.1. However, appellant included this argument in a memorandum of law
filed with the district court. Appellant informed the district court that he had filed the
memorandum, and the court indicated that he had "read the language in that." We hold that
appellant has preserved his argument for appeal. See Taylor v. State, 863 S.W.2d 737, 738 (Tex.
Crim. App. 1993); Melugin v. State, 989 S.W.2d 470, 473 (Tex. App.--Houston [1st Dist.] 1999,
pet. ref'd).
7. The State argues that appellant has not preserved his article 38.23 argument for review. 
See Tex. R. App. P. 33.1. The record reveals, however, that appellant made a similar argument
to the district court. We hold appellant has preserved his argument for appellate review.
8. See supra p. 6.
9. Appellant objected to the State's abandonment at trial but does not allege that action as
error before this Court.
10. In Dillard v. State, 640 S.W.2d 85 (Tex. App.--Fort Worth 1982, no pet.), the court
dismissed a prosecution under section 37.09 because the court found that the defendant's
confession, in which he admitted he had possession of the contraband at the very time he was
questioned by the police and denied possession, was inadmissible. See 640 S.W.2d at 86. After
the court excluded the defendant's testimony, it concluded that there was no evidence that the
defendant "concealed or secreted" the contraband during the investigation. See id. Dillard,
however, offers little guidance on the meaning of "conceal" under section 37.09.
11. Because we have held that the evidence of concealment is legally insufficient, it is
unnecessary to discuss appellant's factual-sufficiency complaint. See Tex. R. App. P. 47.1.
12. See Taylor v. State, 939 S.W.2d 148 (Tex. Crim. App. 1996); Rey v. State, 897 S.W.2d
333 (Tex. Crim. App. 1995); De Freece v. State, 848 S.W.2d 150 (Tex. Crim. App. 1993);
McBride v. State, 838 S.W.2d 248 (Tex. Crim. App. 1992). 
13. The rules of criminal and civil evidence were combined, effective March 1, 1998. Former
rule 405 did not distinguish between the guilt stage and the punishment stage. Because the current
rule is silent on the proper predicate for the punishment stage, we will continue to apply case law
defining the proper predicate for opinion witnesses at the punishment phase. See, e.g., Ibarra v.
State, No. 72,974, slip op. at 17-18 (Tex. Crim. App. Oct. 20, 1999).



akel

Affirmed in Part; Reversed and Rendered in Part

Filed: March 30, 2000

Publish
1. Appellant's punishment was enhanced by four prior felony convictions.
2. Koch was later joined by Officer Gregory White. Both officers' versions of events are
taken from their testimony at the suppression hearing, which appellant and this Court agree is
substantially similar to the officers' testimony at trial.
3. Koch testified that appellant matched the dispatch description of a white male wearing
jeans and a jacket. However, the transcript of the dispatch report indicates that there was no
description of the clothing that the white male was wearing and instead reported that the black
male was wearing a jacket. Koch admitted that he must have confused the clothing description
of the two men although he maintained that it is his independent recollection that the white man
was described as wearing a jacket.
4. Appellant makes no mention of chapter 14 of the Texas Code of Criminal Procedure in his
brief to this Court other than to say it was one of the grounds on which he urged his motion to
suppress. Because appellant makes no separate argument regarding the applicability of chapter
14, it is not before us and we will not discuss this portion of his motion. See infra pp. 5-10.
5. Chambers and Nottingham preceded Johnson. See Chambers v. State, 866 S.W.2d 9 (Tex.
Crim. App. 1993); Nottingham v. State, 908 S.W.2d 585 (Tex. App.--Austin 1995, no pet.). We
will follow Johnson as we did in Shamsie. See State v. Shamsie, 940 S.W.2d 223, 225 (Tex.
App.--Austin 1997, no pet.), overruled on other grounds, Woods v. State, 956 S.W.2d 33 (Tex.
Crim. App. 1997).
6. The State argues that appellant has not preserved this argument for appeal because
appellant never explicitly argued that he abandoned the cocaine as a result of police misconduct. 
See Tex. R. App. P. 33.1. However, appellant included this argument in a m