

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-18-00009-CR

_____

WILLIAM ANTHONY HESS, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 235th District Court
Cooke County, Texas
Trial Court No. CR17-00101

---

Before Birdwell, Bassel, and Womack, JJ.
Memorandum Opinion by Justice Bassel

# MEMORANDUM OPINION

## I. Introduction

Appellant William Anthony Hess raises three points challenging the sufficiency of the evidence to support his conviction for the offense of tampering with physical evidence. *See* Tex. Penal Code Ann. § 37.09(a)(1). We affirm.

## II. Background

### A. June 11, 2016

Around 9:00 a.m. on June 11, 2016, a deputy patrol officer with the Cooke County Sheriff's office was driving in his patrol vehicle southbound on FM 373, just south of Muenster, Texas. As the patrol officer came to the top of a hill, he passed an extended cab white Ford pickup truck travelling in the opposite direction on FM 373. The patrol officer testified that because he knew the truck was Appellant's and that Appellant did not have a valid driver's license at the time, he quickly turned his patrol vehicle around. Upon turning his patrol vehicle and seeing that Appellant had already travelled a long distance down the road, the patrol officer realized that Appellant must have sped up. The patrol officer then witnessed the truck's brakes lock up, smoke pour from the tires, and the truck go in reverse before making a sharp left turn onto a dirt path.[1]

---

[1]The truck's tires left a visible skid mark on the road just before the turn onto the dirt path.

As the truck turned down the dirt path, the patrol officer witnessed the truck's driver's door open. The patrol officer continued to follow Appellant down the dirt path, and he witnessed the truck's driver's door open again before the truck came to a stop after about 200 feet. Because the door had opened twice, the patrol officer expected Appellant to try to run, but instead Appellant abruptly opened his door and placed his hands up before stepping out of the truck.[2] The patrol officer handcuffed

---

[2]The patrol officer testified that when he asked Appellant why he turned down the dirt path, Appellant stated that he was checking on hay for his brother or cousin, and he provided the officer with the name of the owner of the land. The patrol officer checked the property records to see who owned the land, and the name that Appellant gave him did not match, which led the patrol officer to believe that Appellant lied about why he turned onto the dirt path:

*Q.* Okay. And what was his reason that he gave for turning in that path?

*A.* He stated that he was going to check the hay because his brother or his cousin cuts it, and he gave me the name of who owns it.

*Q.* And did you -- were you able to check – or let me ask you. Do you have access to property records to be able to check who owns --

*A.* We do.

*Q.* And --

*A.* I do.

*Q.* -- is the name that he gave the person who owned that land?

*A.* Negative.

*Q.* Okay. So you believe he lied to you on that?

Appellant for driving without a license and placed him in the back of his patrol vehicle.

The patrol officer called a tow truck and began taking an inventory of the contents of the truck. He testified that during the inventory, he observed a syringe on the truck's driver's side kickplate. At that point, the patrol officer believed there was evidence of the crime of possession of drug paraphernalia. He also realized that when Appellant was opening his door, it was possibly to try to kick the syringe out of the truck. So, after moving his police vehicle to the road to signal the tow truck, the patrol officer began walking the entire route beginning with the skid mark on FM 373 to see if anything else came out of Appellant's truck. As the patrol officer reached the dirt path where Appellant's door opened the second time, he found a broken glass pipe and a broken lighter. Using a field test, the patrol officer tested the residue on the pipe and confirmed that it was methamphetamine.

## B. Trial Proceedings

Appellant was indicted for the offense of tampering with or fabricating physical evidence by "knowing that an investigation was in progress, to wit: a traffic stop, intentionally and knowingly destroy[ing] a pipe containing methamphetamine residue, with intent to impair its availability as evidence in the investigation." The indictment included an allegation that Appellant had been convicted of a prior felony. Appellant pleaded not guilty.

*A.* I believe so.

4

The State's only witness at trial was the patrol officer who had pulled Appellant over and discovered the broken pipe. The State admitted three exhibits without objection: (1) the patrol officer's body camera and dashboard camera videos; (2) the pipe; and (3) the syringe. A portion of the videos was played for the jury, and the body camera video showed the patrol officer search along the dirt path before he identified the broken pipe. The prosecutor paused the video and asked the patrol officer about what he had found:

> Q. *(BY [PROSECUTOR])* What is that?
>
> A. The broken meth pipe.
>
> Q. And what type of condition was it in when you sat -- when you saw it?
>
> A. The bulb was broke on it, the part that actually holds the methamphetamine, but it wasn't covered in dust, like it hadn't been there but for a short amount of time.
>
> Q. That's a pretty dirty little road?
>
> A. Very dusty.

Appellant called one witness, a friend of his, who testified that around June 11, 2016, he had parked on the same dirt path to go fishing and that the broken pipe could have been his:

> Q. *(BY [APPELLANT'S TRIAL COUNSEL])* Okay. So you're telling this Court that that glass pipe that is in question here belonged to you and not to [Appellant]?
>
> A. It may.

*Q.* Yes or no, sir?

*A.* Yeah, I guess, I mean --

The jury returned a guilty verdict. Following the punishment trial, the jury assessed Appellant's punishment at 10 years' confinement in the Institutional Division of the Texas Department of Criminal Justice and fined him $10,000. The trial court rendered final judgment in accordance with the jury's verdict. This appeal followed.

### III. SUFFICIENCY OF THE EVIDENCE

In three points, Appellant challenges the sufficiency of the evidence showing that (1) he intentionally or knowingly destroyed the pipe, (2) he possessed the pipe, and (3) he destroyed the pipe while an investigation was in progress.

### A. Standard of Review

Federal due process requires that the State prove beyond a reasonable doubt every element of the crime charged. *Jackson v. Virginia*, 443 U.S. 307, 316, 99 S. Ct. 2781, 2787 (1979); *see* U.S. Const. amend. XIV. In our due-process evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017).

This standard gives full play to the factfinder's responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences

6

from basic facts to ultimate facts.  *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Queeman*, 520 S.W.3d at 622.

The factfinder alone judges the evidence's weight and credibility.  *See* Tex. Code Crim. Proc. Ann. art. 38.04; *Queeman*, 520 S.W.3d at 622.  Thus, when performing an evidentiary-sufficiency review, we may not re-evaluate the evidence's weight and credibility and substitute our judgment for the factfinder's.  *Queeman*, 520 S.W.3d at 622.  Instead, we determine whether the necessary inferences are reasonable based on the evidence's cumulative force when viewed in the light most favorable to the verdict.  *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App.); *see Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017) ("The court conducting a sufficiency review must not engage in a 'divide and conquer' strategy but must consider the cumulative force of all the evidence.").  We must presume that the factfinder resolved any conflicting inferences in favor of the verdict, and we must defer to that resolution.  *Murray*, 457 S.W.3d at 448–49.

To determine whether the State has met its *Jackson* burden to prove a defendant's guilt beyond a reasonable doubt, we compare the crime's elements as defined by the hypothetically correct jury charge to the evidence adduced at trial.  *See Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016); *Crabtree v. State*, 389 S.W.3d 820, 824 (Tex. Crim. App. 2012) ("The essential elements of the crime are determined by state law.").  Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of

proof or restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Jenkins*, 493 S.W.3d at 599. The "law as authorized by the indictment" means the statutory elements of the charged offense as modified by the factual details and legal theories contained in the charging instrument. *See id.*; *see also Rabb v. State*, 434 S.W.3d 613, 616 (Tex. Crim. App. 2014) ("When the State pleads a specific element of a penal offense that has statutory alternatives for that element, the sufficiency of the evidence will be measured by the element that was actually pleaded, and not any alternative statutory elements.").

The standard of review is the same for direct and circumstantial evidence cases; circumstantial evidence is as probative as direct evidence in establishing guilt. *Jenkins*, 493 S.W.3d at 599. We must scrutinize circumstantial evidence of intent as we do other elements of an offense. *Laster v. State*, 275 S.W.3d 512, 519–20 (Tex. Crim. App. 2009). But when a record supports conflicting inferences, we "must presume— even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflict in favor of the prosecution, and must defer to that resolution." *Matson v. State*, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991).

### B. Hypothetically correct jury charge

Section 37.09 of the penal code provides three elements for the offense of tampering with physical evidence: "(1) Knowing that an investigation or official proceeding is pending or in progress; (2) a person alters, destroys, or conceals any record, document, or thing; (3) with intent to impair its verity, legibility, or availability

as evidence in the investigation or official proceeding." *Rabb*, 434 S.W.3d at 616; *see* Tex. Penal Code Ann. § 37.09(a)(1); *Williams v. State*, 270 S.W.3d 140, 142 (Tex. Crim. App. 2008).

Here, the indictment alleged that Appellant destroyed (not altered or concealed) the pipe during an investigation in progress (not pending). Thus, a hypothetically correct charge authorized by the indictment in this case would instruct the jury to find Appellant guilty of tampering with physical evidence if he: (1) knowing that an investigation—that is, the traffic stop—was in progress, (2) destroyed a pipe containing methamphetamine, (3) with intent to impair its availability as evidence in the investigation. *See* Tex. Penal Code Ann. § 37.09(a)(1).

### C. The evidence is sufficient to support that the pipe was destroyed by Appellant.

In his first point, Appellant contends that the trial evidence is insufficient to establish beyond a reasonable doubt that Appellant destroyed the pipe. Appellant argues that based on the meaning of "destroy" and the officer's testimony that the pipe was merely "broken," the evidence is insufficient to support that the pipe as found by the officer was "destroyed." Appellant alternatively argues that even if the evidence is sufficient to support that the pipe as found by the officer was destroyed, the State put on no evidence about the prior condition of the pipe, so it was not reasonable for the jury to infer that Appellant had destroyed the pipe when it was not established that the pipe was previously intact.

As an initial matter, in *Williams*, the court of criminal appeals analyzed the definition of "destroy" as used in section 37.09(a)(1) and construed it to mean a thing that has been "ruined and rendered useless." 270 S.W.3d at 146; Tex. Penal Code Ann. § 37.09(a)(1). Thus, to resolve Appellant's first point, we must decide whether the evidence is sufficient to support that the pipe was ruined and rendered useless by Appellant. We find two cases from the court of criminal appeals instructive.

In *Rabb*, the court of criminal appeals considered a case in which the trial court had convicted the appellant of violating section 37.09(a)(1) of the penal code by intentionally destroying a plastic baggie containing pills by swallowing the plastic baggie after an officer had attempted to retrieve it during a pat-down. 434 S.W.3d at 615. The court of appeals reversed the trial court and held that based on the evidence at trial, no rational trier of fact could have found that the appellant destroyed the baggie within the meaning of "destroy" as used in the statute. *Id.* at 616. Before the court of criminal appeals, the State argued that a reasonable factfinder could have relied on their "common sense, common knowledge, observation, and experience" to infer that the evidence was destroyed based on testimony that the appellant had swallowed baggie and pills. *Id.* at 617. The court of criminal appeals rejected the State's argument because "the State did not present any evidence on the condition of the baggie or its contents *after* Appellant swallowed them, nor any evidence that demonstrated that the items had been ruined or rendered useless." *Id.* (emphasis added). Thus, the court of criminal appeals reasoned, "while it is *possible* that the

10

baggie was destroyed, it is just as possible that it was not," so "without any evidence on the status of the baggie, a determination on whether it was intact or destroyed after passing through Appellant's stomach would be based purely on speculation." *Id.*

In *Williams*, the court of criminal appeals considered a case in which the appellant had been convicted of violating section 37.09(a)(1) by dropping and stomping on a crack pipe during a pat-down. 270 S.W.3d at 142. On appeal, the appellant challenged the sufficiency of the evidence that the "crack pipe was destroyed within the meaning of the law," and the court of appeals affirmed the conviction. *Id.* The court of criminal appeals likewise concluded that the evidence was sufficient to support a rational inference that pipe had been "destroyed" because the arresting officer testified that the defendant stepped on and broke the pipe into pieces and that the pipe "shattered" so he was unable to retrieve every piece and even if he had retrieved every piece, it would have been impossible to completely glue back together and reconstruct the pipe, and because the State had introduced a demonstrative exhibit which showed a complete crack pipe:

> In this case, the crack pipe was ruined and rendered useless when Appellant stepped on it and broke it into pieces. Officer Stowe testified that he was unable to retrieve every piece of the shattered crack pipe, and even if the recovered pieces could have been glued together in an attempt to reconstruct the evidence to its former physical state, it would be less than a complete crack pipe. That the State introduced the recovered pieces only after showing a complete crack pipe as a demonstrative exhibit indicates that the glass shards and copper mesh filter had lost their identity as a crack pipe and were not recognizable as a crack pipe. Therefore, the crack pipe was destroyed.

*Id.* at 146.

We recognize that unlike in *Williams*, the State in this case did not elicit testimony from the officer that he was unable to retrieve all of the pieces of the pipe or that it would be impossible to put the pipe back together, nor did the State introduce a demonstrative exhibit to show what an intact meth pipe would look like. And, there was no direct evidence presented as to the pipe's condition before it was forced from the truck. However, unlike *Rabb*, there is evidence that supports that the pipe was ruined and rendered useless: (1) the patrol officer's testimony that the pipe's bulb containing the methamphetamine was "broken"; (2) the body camera video appearing to show the patrol officer pick up a piece of the broken pipe; and (3) the pipe itself which was admitted into evidence and which the jurors were able to inspect. There is also evidence to support that it was Appellant who caused the pipe to be ruined and rendered useless: (1) the dashboard camera video showing the truck door open while the truck was still moving down the dirt path; (2) the body camera video showing the officer seize the pipe along the dirt path in proximity to where Appellant's door had opened; and (3) the testimony from the patrol officer that the pipe was not dusty.

The cumulative force of the evidence, viewed in the light most favorable to the verdict, supports a reasonable inference that Appellant either broke the pipe and forced it out of the truck or forced it out of the truck, which caused it to break. That the State failed to present direct evidence of the prior intact condition of the pipe

12

does not affect our conclusion because courts have routinely upheld convictions under section 37.09(a)(1) when the identity of the thing destroyed—let alone its prior condition—was neither specifically nor definitively established. *See State v. Zuniga*, 512 S.W.3d 902, 908 (Tex. Crim. App. 2017) (approving of intermediate courts that have "upheld convictions for tampering with evidence without requiring the State to definitively prove exactly what evidence was altered, concealed, or destroyed"); *Vaughn v. State*, 33 S.W.3d 901, 903–04 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (upholding conviction for tampering with evidence where State did not prove the specific identity of the evidence destroyed).

Therefore, we believe a rational factfinder could have reasonably inferred from the evidence that Appellant ruined and rendered the pipe useless—that is, destroyed it—by forcing it out of his truck on the dirt path and either it breaking when it hit the ground or by first breaking it in the truck and then forcing the broken pipe out of the truck. *See Williams*, 270 S.W.3d at 146.

Accordingly, we overrule Appellant's first point.

## D. The evidence is sufficient to support that the pipe was in Appellant's possession.

In his second point, Appellant contends that the evidence is insufficient to support that Appellant was in possession of the pipe. Appellant focuses on the patrol officer's testimony that he did not see Appellant throw or kick anything out of the

13

truck and that no DNA testing was performed to forensically link Appellant to the pipe.

As explained above, the jury heard testimony from the patrol officer and saw the dashboard camera and body camera video that showed Appellant's truck abruptly stop, back up, and turn down the dirt road and then Appellant open his door twice. The dashboard camera video showed Appellant exit his truck rather than wait for the officer to approach the vehicle. The officer testified that he found the syringe on the truck's driver's side kickplate. The body camera video showed the patrol officer find the pipe along the dirt path, which the patrol officer testified was about where the door had opened. Finally, the patrol officer testified that, unlike the dirt road and other items along it, the pipe and broken bulb were not dusty.

Although the officer testified that it was "possible" that the pipe was not dropped by Appellant and that he did not see anything "fly out the window" or "fall out of the vehicle," we believe it was rational for a jury to infer from the evidence that the pipe was in Appellant's possession and that he forced it out of his truck when he opened the door while still driving along the dirt road. *See Thornton v. State*, 425 S.W.3d 289, 305–07 (Tex. Crim. App. 2014) (reversing court of appeals and concluding evidence was sufficient to support jury conviction under section 37.09 when appellant broke a glass crack pipe despite the alternative "reasonable hypothesis" that the appellant may simply have been trying to dispossess it); *see also Santellana v. State*, No. 13-16-00394-CR, 2017 WL 5505527, at *4–5 (Tex. App.—

14

Corpus Christi–Edinburg Nov. 16, 2017, no pet.) (mem. op., not designated for publication) (affirming sufficiency of evidence to support conviction under section 37.09(a)(1) based on reasonable inference when the evidence showed that (1) the appellant was aware an investigation was ongoing during which officers had found hypodermic needles and methamphetamine in his hotel room, (2) the appellant asked to change clothes and moved a pile of clothing into a restroom, and (3) one of the needles was missing from the bathroom and a hypodermic needle was then found "within feet" of where the appellant was arrested after he had attempted to flee).[3]

---

[3]Despite his complaint with the patrol officer's testimony that running a DNA test on the pipe in this case was not a high priority, Appellant directs us to no legal authority, nor are we aware of any, requiring that a defendant's prior possession of a destroyed item under section 37.09(a)(1) be established by DNA testing. *See Hollingsworth v. State*, 15 S.W.3d 586, 595–96 (Tex. App.—Austin 2000, no pet.) (holding "the district court did not abuse [its] discretion in denying appellant's motion to appoint a DNA expert" when the appellant challenged his section 37.09 conviction because the area in which the appellant was arrested was a high crime area and "it can reasonably be questioned whether the contraband seized by the officers was previously present on the ground prior to the seizure of [appellant]"); *cf. McLean v. State*, No. 05-18-00545-CR, 2018 WL 6426827, at *3 (Tex. App.—Dallas Dec. 6, 2018, no pet.) (mem. op., not designated for publication) ("Although appellant's mere presence where the drugs are found is insufficient to establish possession, appellant's proximity to the drugs combined with other evidence can prove possession beyond a reasonable doubt."); *Work v. State*, No. 03-18-00244-CR, 2018 WL 2347013, at *7 (Tex. App.—Austin) (mem. op., not designated for publication) (explaining that the appellant "open[ing] his door in an effort to get out of the truck" shortly after stopping his truck "supported an inference that [the appellant] did not want [the officer] to approach the vehicle" and thus supported a rational inference that the appellant was in possession of drugs and affirming his section 37.09(a)(1) conviction), *habeas corpus granted, Ex parte Work*, No. WR-89,091-01, 2018 WL 5624022, at *1 (Tex. Crim. App. Oct. 31, 2018) (per curiam).

And, Appellant's witness's testimony, which suggested that the broken pipe might have been his, did not make it irrational for the jurors to conclude that the broken pipe was Appellant's. Indeed, the jurors are the "exclusive judges of the facts, the credibility of the witnesses, and the weight to be given their testimony" and as such are "entitled to accept one version of the facts and reject another or reject any of a witness'[s] testimony." *Penagraph v. State*, 623 S.W.2d 341, 343 (Tex. Crim. App. [Panel Op.] 1981). And in our sufficiency review, we may not re-evaluate the evidence's weight and credibility and substitute our judgment for the factfinder's. *Queeman*, 520 S.W.3d at 622. Thus, the jury could have simply chosen to disbelieve Appellant's witness's statement that the pipe could have been his.

Accordingly, we overrule Appellant's second point.

### E. The evidence is sufficient to support that Appellant destroyed the pipe while an investigation was in progress.

In his third point, Appellant contends that the evidence is insufficient to establish beyond a reasonable doubt that Appellant destroyed the pipe while an investigation was pending or in progress. Relying on *Lumpkin v. State*, 129 S.W.3d 659 (Tex. App.—Houston [1st Dist.] 2004, pets. ref'd), Appellant argues that the investigation as charged in the indictment was the traffic stop, yet the act hindering the investigation was the destruction of the pipe—an event unrelated to the initial purpose and title of the investigation.

16

In *Williams*—a case involving a section 37.09(a)(1) charge for tampering with a crack pipe during a weapons investigation—the court of criminal appeals rejected the argument that the title of the investigation and the evidence destroyed must match:

> Appellant's argument highlights the lack of coordination within the indictment, which names a crack pipe as evidence in a weapons investigation. But *the title of the investigation and the evidence destroyed need not match in an indictment* alleging an offense under section 37.09(a)(1), as long as the offender destroyed a thing with the intent to impair its availability as evidence in an investigation that he knows is in progress.

270 S.W.3d at 144–45 (emphasis added); *see also Rodriguez v. State*, No. 13-15-00287-CR, 2016 WL 3626097, at *4 (Tex. App.—Corpus Christi–Edinburg June 30, 2016, no pet.) (mem. op., not designated for publication) ("The court of criminal appeals [in *Williams*] held that the title of the investigation and the evidence allegedly tampered with did not have to 'match' in order for there to be a violation of section 37.09(a)(1), so long as the tampering was committed with the intent to impair its availability as evidence in any investigation that the offender knows is pending.").

As we have already explained, the evidence supported that during a traffic stop investigation, Appellant intentionally forced the pipe out of his moving truck while the patrol officer was attempting to pull him over. Considering the cumulative force of this evidence in the light most favorable to the jury's verdict, it was rational for the jury to infer that, knowing a traffic stop investigation was in progress, Appellant destroyed the pipe with the conscious objective to impair its availability as evidence in the traffic stop investigation. *See Williams*, 270 S.W.3d at 144–45; *Lemarr v. State*, 487

S.W.3d 324, 329 (Tex. App.—Amarillo 2016, no pet.) (affirming the sufficiency of the evidence supporting Appellant's conviction for tampering with a plastic baggie containing a white substance and explaining that "the fact that the purpose of the initial stop and the focus of the pending investigation was the unauthorized use of a motor vehicle is of no consequence").

Accordingly, we overrule Appellant's third point.

## IV. CONCLUSION

Having overruled Appellant's three points, we affirm the trial court's judgment.

/s/ Dabney Bassel

Dabney Bassel
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: March 28, 2019