Opinion filed April 14,
2011

 

                                                                       In The

                                                                              

  Eleventh
Court of Appeals

                                                                   __________

 

                                    Nos. 11-09-00317-CR & 11-09-00318-CR

                                                    __________

 

                            ROBERT
KEITH EVANOFF, Appellant

                                                         
V.

                                     
STATE OF TEXAS, Appellee



 

                                   On
Appeal from the 90th District Court

 

                                                          Stephens
County, Texas

 

                                           Trial
Court Cause Nos. F31959 & F31960



 

M
E M O R A N D U M    O P I N I O N

The
jury convicted Robert Keith Evanoff of tampering with physical evidence[1]
and of possession of less than one gram of a controlled substance.[2] 
Evanoff’s punishment was assessed at sixty years confinement and a fine of
$10,000 on the tampering conviction and at twenty years confinement and a fine
of $10,000 on the possession conviction.  We affirm.  

 

I.  Background
Facts

On
the evening of April 12, 2008, Breckenridge Police Department Sergeant Jeff Baker
noticed a vehicle with a driver’s side headlamp that was not working.  Sergeant
Baker activated his emergency lights and followed the vehicle.  It pulled into
the carport of Evanoff’s residence.  

Sergeant
Baker approached the driver’s side door.  He recognized Evanoff.  Sergeant
Baker and Evanoff knew each other and addressed each other by their first
names.  Sergeant Baker told Evanoff that his driver’s side headlamp was out.  He
walked to the front of the vehicle and asked Evanoff to turn the vehicle’s
lights back on, at which time he confirmed that both the high and low beams of
the driver’s side headlamp were out.  Evanoff explained that he had hit a deer.

Evanoff 
got out of the vehicle to talk with Sergeant Baker.  Sergeant Baker asked for
Evanoff’s driver’s license.  Evanoff complied with a license that had expired a
month earlier.  Evanoff claimed that he had tried to renew it several times at
the DPS office but had been unable to do so.  While Sergeant Baker and Evanoff
were talking, a female passenger got out of the vehicle, walked around the
front, and joined them by the driver’s side of the vehicle.

Sergeant
Baker believed that Evanoff was under the influence of an illegal substance.  He
testified that Evanoff appeared nervous and unsteady and was talking rapidly.  Sergeant
Baker had talked with Evanoff before and knew that Evanoff normally did not
talk rapidly.  In addition, Sergeant Baker considered the passenger’s behavior
strange and thought that it might be a distraction.

Sergeant
Baker asked Evanoff if he was in possession of an illegal substance.  Evanoff
responded that he was not “too far out of line” and that he was not “tearing up
the streets of [Sergeant Baker’s] precious little town.”  Sergeant Baker
continued to ask Evanoff if he was in possession of an illegal substance, to
which Evanoff eventually replied, “I might.”  Evanoff told Sergeant Baker, “I
might be holding something you might not be too proud of.”  Evanoff further
indicated that he had hypodermic needles and syringes in the trunk of his car
because he was tired of tearing up his arm using old needles and syringes.  Based
on this information, Sergeant Baker also suspected that Evanoff was in possession
of drug paraphernalia.

Sergeant
Baker told Evanoff that he would give him a warning on his broken headlamp.  Evanoff
asked Sergeant Baker if he wanted the needles and syringes.  Evanoff reached
into the vehicle to open the trunk.  At the same time, he turned off his
vehicle’s lights.  To calm Evanoff down, Sergeant Baker indicated that he would
also give him a warning on the expired driver’s license.

Sergeant
Baker continued to ask if Evanoff was in possession of a controlled substance. 
Evanoff replied that he had “three dimes” in his pocket that he was about to
do.  Based on his training and experience, Sergeant Baker knew that “three
dimes” meant three baggies of a controlled substance.  Sergeant Baker asked
Evanoff to take the baggies out of his pocket and to place them on the trunk of
the vehicle.  Evanoff complied.  Sergeant Baker confirmed that the substance
was an illegal narcotic, which he believed to be cocaine.

            Sergeant
Baker told Evanoff to turn around and put his hands behind his back.  Evanoff
grabbed the baggies and took off, telling Sergeant Baker to “kick his ass.”  Sergeant
Baker used his pepper spray to subdue Evanoff, but in the process was himself
sprayed.  Sergeant Baker called for backup.  He also followed Evanoff around
the vehicle and the house trying to put him under arrest.  While Sergeant Baker
was following Evanoff, the female passenger was walking around Evanoff’s vehicle
looking down at the ground.

With
the help of two other officers, Sergeant Baker managed to subdue Evanoff.  
Evanoff claimed to have swallowed the baggies.  Deputy Caleb Hodges eventually
found them lying on the ground by the front of Evanoff’s vehicle.  Deputy Hodges
testified that they were covered with what appeared to be saliva.  Evanoff was
then read his rights.  The baggies were sent to the DPS Crime Lab in Abilene,
where tests revealed that they contained .51 grams of cocaine.

II. 
Issues

In
his first and second issues, Evanoff argues that the evidence was legally and
factually insufficient to support his conviction of tampering with physical
evidence.  In his third issue, he maintains that the trial court abused its
discretion by denying his motion to suppress.  In his fourth issue, Evanoff
argues that the trial court erred by failing to instruct the jury on the law
applicable to the voluntariness of his statements to Sergeant Baker.  In his
fifth issue, he contends that the trial court erred by failing to pronounce
sentence and to grant Evanoff the right of allocution.  In his sixth, seventh,
and eighth issues, he argues that he received ineffective assistance of counsel
because trial counsel failed to object to evidence that violated his right to
confrontation, failed to request an instruction in the charges on the law
applicable to the case concerning the voluntariness of his statements, and
failed to object to the denial of his statutory right of allocution.  

III. 
Sufficiency of the Evidence

In
his first and second issues, Evanoff argues that the evidence is legally and
factually insufficient to support his conviction of tampering with physical
evidence.  Specifically, Evanoff contends that the evidence presented at trial
was insufficient to show that he intentionally or knowingly concealed the
cocaine or that he intended to impair its availability as evidence.

            We note at the outset of our analysis that the
Texas Court of Criminal Appeals has now held in Brooks v. State, 323 S.W.3d 893 (Tex. Crim. App.
2010), that there is “no meaningful
distinction between the Jackson v. Virginia[3]
legal-sufficiency standard and the Clewis[4] factual-sufficiency standard”; that the Jackson v.
Virginia standard is the “only standard that a reviewing court should apply
in determining whether the evidence is sufficient to support each element of a
criminal offense that the State is required to prove beyond a reasonable
doubt”; and that “[a]ll other cases to the contrary, including Clewis,
are overruled.”  Brooks, 323 S.W.3d at 895, 902, 912 (footnotes added). 
Accordingly, a challenge to the factual sufficiency of the evidence is no
longer viable.  We also note that Evanoff did not have the benefit of the
opinion in Brooks when this case was briefed.  We will review Evanoff’s
factual sufficiency challenge under the legal sufficiency standard set forth in
Jackson v. Virginia.  Under this standard, we must review all of the
evidence in the light most favorable to the verdict and determine whether any
rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt.  Jackson v.
Virginia, 443
U.S. 307; Brooks, 323 S.W.3d at 899.  

At
trial, Sergeant Baker testified that Evanoff pulled the baggies of cocaine out
of his pocket and placed them on the trunk of the car.  Sergeant Baker told
Evanoff to turn around and to put his hands behind his back.  Evanoff then
grabbed the cocaine and took off, telling Sergeant Baker to “kick his ass.”  After
the police subdued Evanoff, Deputy Hodges found the baggies of cocaine under
the carport in front of Evanoff’s vehicle.  The video of the stop was admitted
into evidence and confirms this sequence of events.

Tampering
with physical evidence is defined as “knowing that an offense has been
committed, [the accused] alters, destroys, or conceals any record, document, or
thing with intent to impair its verity, legibility, or availability as evidence
in any subsequent investigation of or official proceeding related to the
offense.”  Tex. Penal Code Ann. §
37.09(d)(1) (Vernon Supp. 2010).  While “conceal” is not defined by the
statute, courts have held it means to hide, to remove from sight or notice, or
to keep from discovery or observation.  See Rotenberry v. State, 245
S.W.3d 583, 588-89 (Tex. App.—Fort Worth 2007, pet. ref’d); Hollingsworth v.
State, 15 S.W.3d 586, 595 (Tex. App.—Austin 2000, no pet.).  The conduct
need not result in the destruction or loss of the evidence; rather, the accused
need only act with the intent to impair its verity or availability as
evidence.  Lewis v. State, 56 S.W.3d 617, 625 (Tex. App.—Texarkana 2001,
no pet.). 

In
support of his argument that the evidence was insufficient to show that he
intentionally and knowingly concealed the baggies of cocaine or that he
intended to impair their availability as evidence, Evanoff cites Hollingsworth;
Spector v. State, 746 S.W.2d 945 (Tex. App.—Austin 1988, no pet.); and
Stewart v. State, 240 S.W.3d 872, 873 (Tex. Crim. App. 2007).

In
Hollingsworth, a police officer responding to a report of a knife fight
saw the defendant walking in an area known for drug trafficking.  15 S.W.3d at
589.  Believing that the defendant had been involved in the fight, the officer
asked him to stop.  Id. at 589-90.  The defendant continued to walk
away, ducking briefly behind a dumpster.  Id. at 590.  Another officer
saw the defendant spit out two off-white, cube-shaped objects behind the
dumpster.  The objects were crack cocaine.  Id.  The defendant was
arrested and later convicted of tampering with physical evidence.  Id.
at 590-91.  He argued that the evidence was insufficient to show that he
concealed the crack cocaine with the intent to impair its availability as
evidence.  Id. at 594.  The evidence presented at trial showed that it
was common practice for users to carry crack cocaine in their mouths to keep it
from public view.  Id. at 595.  The Austin Court of Appeals likened this
practice to that of carrying the keys of a stolen car in one’s pocket.  Id. 
The court pointed out there was no evidence that the defendant placed the
cocaine in his mouth upon seeing the officers in an effort to hide it from
them.  Id.  In fact, he spit the cocaine out behind a dumpster, thereby
exposing it to the officers’ view.  Id.  For these reasons, the court
held that the evidence was insufficient to show that the defendant concealed
the cocaine with the intent to impair its availability as evidence.  Id.

This
court has chosen not to follow Hollingsworth.  See Collier v. State,
254 S.W.3d 576, 578 (Tex. App.—Eastland 2008) (reasoning that a jury faced with
the facts in Hollingsworth could have found intent to impair the
cocaine’s availability based on the defendant’s evasion of the officers after
being ordered to stop and his spitting out the cocaine), pet.
dism’d-improvidently granted, 284 S.W.3d 866 (Tex. Crim. App. 2009). However,
even under Hollingsworth, the present case is distinguishable.  Here,
there was evidence that, faced with arrest, Evanoff grabbed the baggies and
took off, removing the cocaine for a period of time from Sergeant Baker’s
observation.  Thus, the jury had before it evidence from which it could find
that Evanoff intentionally and knowingly concealed the cocaine.  See
Hollingsworth, 15 S.W.3d at 595 (using dictionary definition of “conceal”
as meaning “[t]o hide or keep from observation, discovery, or understanding;
keep secret”).

            The
other cases cited by Evanoff are also distinguishable.  In Spector, the
defendant was convicted of destroying a marihuana cigarette with the intent to
impair its availability as evidence.  746 S.W.2d at 945.  Specifically,
the defendant tore the marihuana cigarette in two and threw the pieces into a
ditch.  Id. at 946.   The trooper managed to recover a portion of the cigarette,
although part of its contents was lost.  Id.   The recovered portion of
the cigarette was used to convict the defendant of possession of marihuana.  Id. 
The court held that the evidence was insufficient to support the defendant’s
conviction of destroying the cigarette because the evidentiary value of the
cigarette was not so lost as to be considered destroyed.  Id.  In the
present case, Evanoff was convicted of concealing the baggies of cocaine with
the purpose of impairing their availability as evidence.  The holding in Spector
with respect to the destruction of evidence is not, therefore, determinative.  See
Collier, 254 S.W.3d at 578.  Moreover, the fact that Deputy Hodges
eventually found the baggies on the ground under the carport is not at odds
with the jury’s finding that Evanoff intentionally or knowingly concealed the
cocaine.  See Lewis, 56 S.W.3d at 625 (“The statute does not require
that the evidence be made useless to the investigation or proceeding by its
concealment; rather, it requires that the defendant have acted with the intent
to impair its usefulness in the investigation or the proceeding.”).

            Lastly,
in Stewart, the defendant was a police officer convicted of tampering
with evidence after returning some marihuana that he had confiscated from a
prospective confidential informant.  240 S.W.3d at 873.  The Court of
Criminal Appeals held that the evidence presented at trial was insufficient to
show that, by returning the marihuana, the defendant intended to impair its
availability as evidence as required by Section 37.09.  Id. at 873-74. 
Evanoff correctly cites this case for the proposition that the State must prove
that a defendant charged under Section 37.09 acted with intent to impair some
evidence’s availability.  Evanoff argues that the evidence of such intent was
lacking in his case as the cocaine was eventually found “in the carport of his
house in plain view and left there for the officers to recover.”  However,
the fact that Evanoff was ultimately unsuccessful in impairing the availability
of the cocaine as evidence does not negate his intent to do so, which a jury
could find in his grabbing the cocaine from the trunk of the car when faced
with arrest.  See Lewis, 56 S.W.3d at 625.

             Thus,
viewing the evidence in the light most favorable to the verdict, a rational
trier of fact could have found that Evanoff intentionally and knowingly
concealed the cocaine with the intent to impair its availability as evidence
when, after having revealed the cocaine to Sergeant Baker and being then
subject to arrest, he grabbed it from the trunk of the car and took off,
thereby removing the cocaine from Sergeant Baker’s observation.  The evidence
was sufficient to support his conviction under Section 37.09(d)(1).  Evanoff’s
first and second issues are overruled.  

IV. 
Motion to Suppress

In
his third issue, Evanoff argues that the trial court abused its discretion by
denying his motion to suppress based on lack of reasonable suspicion.  While he
does not dispute the initial basis for the traffic stop, Evanoff contends that,
once Sergeant Baker determined that his vehicle’s headlamp was not working and
that his driver’s license had expired, reasonable suspicion was required to
detain him further.

            We
review the trial court’s denial of a motion to suppress for abuse of
discretion.  Oles v. State, 993 S.W.2d 103, 106 (Tex. Crim. App. 1999). 
The trial court abuses its discretion when its decision is so clearly wrong as
to lie outside that zone within which reasonable persons might disagree.  Cantu
v. State, 842 S.W.2d 667, 682 (Tex. Crim. App. 1992).  Because the trial
court is the exclusive factfinder, we review evidence brought forward at the
suppression hearing in the light most favorable to the trial court’s ruling.  Carmouche
v. State, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000).  Where the trial court
makes no explicit findings of historical fact, we view the evidence in the
light most favorable to the trial court’s ruling and assume that the trial
court made implicit findings of fact.  Carmouche, 10 S.W.3d at 328.  

            Police
officers may stop and detain a person if they have a reasonable suspicion that
a traffic violation is in progress or has been committed.  Garcia v. State,
827 S.W.2d 937, 944 (Tex. Crim. App. 1992).  A traffic stop is a detention and
must be reasonable under the United States and Texas Constitutions.  See
Davis v. State, 947 S.W.2d 240, 245 (Tex. Crim. App. 1997); Caraway
v. State, 255 S.W.3d 302, 307 (Tex. App.—Eastland 2008, no pet.).   To be
reasonable, a traffic stop must be temporary and last no longer than necessary
to effectuate the purpose of the stop.  Florida v. Royer, 460 U.S. 491,
500 (1983); Davis, 947 S.W.2d at 245.  Reasonableness is measured in
objective terms by examining the totality of the circumstances.  Ohio v.
Robinette, 519 U.S. 33, 39 (1996); Spight v. State, 76 S.W.3d 761,
765 (Tex. App.—Houston [1st Dist.] 2002, no pet.).  An investigative stop that
is reasonable at its inception may violate the Fourth Amendment because of
excessive intensity or scope.  Davis, 947 S.W.2d at 243 (citing Terry
v. Ohio, 392 U.S. 1 (1968)).

            During
a routine traffic stop, an officer may check for outstanding warrants and
demand identification, a valid driver’s license, and proof of insurance from
the driver.  Kothe v. State, 152 S.W.3d 54, 63 (Tex. Crim. App. 2004); Caraway,
255 S.W.3d at 307.  If, during that investigation, an officer develops
reasonable suspicion that another violation has occurred, the scope of the
initial investigation expands to include the new offense.  Goudeau v. State,
209 S.W.3d 713, 719 (Tex. App.—Houston [14th Dist.] 2006, no pet.).   When the
reason for the stop has been satisfied, the stop may not be used as a “fishing
expedition for unrelated criminal activity.”  Davis, 947 S.W.2d at 243
(quoting Robinette, 519 U.S. at 41 (Ginsburg J., concurring)).  Once the
officer concludes the investigation of the conduct that initiated the stop,
continued detention of a person is permitted only if there is reasonable
suspicion to believe that another offense has been or is being committed.  Id.
at 245. 

Reasonable
suspicion must be founded on specific, articulable facts which, when combined
with rational inferences from those facts, would lead the officer to conclude
that a particular person actually is, has been, or soon will be engaged in
criminal activity.  Crain v. State, 315 S.W.3d 43, 52 (Tex. Crim. App.
2010).   While nervousness alone is not sufficient to establish reasonable
suspicion, it is a factor that may be considered.  State v. Wilson, 295
S.W.3d 759, 762 (Tex. App.—Eastland 2009, no pet.). Whether the totality of the
circumstances is sufficient to support an officer’s reasonable suspicion is a
legal question that we review de novo.  Madden v. State, 242 S.W.3d 504,
511 (Tex. Crim. App. 2007).

Sergeant
Baker testified that he initiated the traffic stop because the driver’s side
headlamp of Evanoff’s vehicle was out.  After verifying that the headlamp was
out, Sergeant Baker asked to see Evanoff’s driver’s license, and Evanoff told
him that it had expired.  Evanoff does not challenge the propriety of Sergeant
Baker’s initial actions.  He argues, however, that when Sergeant Baker
questioned him as to whether he was in possession of a controlled substance, Sergeant
Baker exceeded the scope of the initial investigation.

The
evidence shows that after Sergeant Baker asked to see Evanoff’s driver’s
license, at approximately a minute into the stop, he began to question Evanoff
as to whether he was in possession of a controlled substance.  From that point
until Evanoff took the cocaine out of his pocket, Sergeant Baker’s
investigation focused on whether Evanoff was in possession of drug
paraphernalia or of a controlled substance.  This new line of questioning
exceeded the scope of the initial traffic investigation, and reasonable
suspicion that another violation had occurred was required. See Davis,
947 S.W.2d at 243; Goudeau, 209 S.W.3d at 719.

At
the suppression hearing, Sergeant Baker testified that Evanoff’s nervousness,
his rapid talking, and the passenger’s decision to get out of the vehicle and walk
around to join them, led him to suspect that Evanoff might be under the
influence of a controlled substance.  Sergeant Baker had known Evanoff prior to
the stop.  He testified that he had spoken with Evanoff on other occasions and
that Evanoff did not always talk rapidly.  On those occasions when Evanoff did
talk rapidly, Sergeant Baker testified that he “thought [that] he was under the
influence of something.”

The
DVD taken of the stop was admitted at the suppression hearing.  A trial court’s
determination of historical facts based on a videotape recording is reviewed
under a deferential standard.  Carter v. State, 309 S.W.3d 31, 40 (Tex.
Crim. App. 2010).  We have reviewed that video ourselves.  The video and
testimony provided the trial court with sufficient information to inform its
exercise of discretion, and no error has been shown in the trial court’s
decision to deny the motion to suppress.  Evanoff’s third issue is overruled.

V.  Instructions
on Voluntariness

In
his fourth issue, Evanoff argues that the trial court erred by failing to
submit jury instructions on the voluntariness of his statements to Sergeant
Baker.  Evanoff admits that he did not request a jury instruction on
voluntariness.  Nevertheless, he contends that the trial court was required to
submit an instruction on the law applicable to the case under Tex. Code Crim. Proc. Ann. art. 38.22,
§§ 6, 7 (Vernon 2005 ).  When the defendant does not present a proposed jury
instruction at trial, any potential error in the charge is reviewed only for
egregious harm.  Oursbourn v. State, 259 S.W.3d 159, 174 (Tex.
Crim. App. 2008).    

Article
38.22, Section 6, provides a general instruction that asks the jury to
determine whether a defendant’s statement was made under voluntary conditions. 
Oursbourn, 259 S.W.3d at 173.  This section applies only “where a
question is raised as to the voluntariness of a statement of an accused.”  Article
38.22, § 6.   The Texas Court of Criminal Appeals has held that a “question is
raised” when the trial court is notified by the parties or raises on its own an
issue about the voluntariness of a statement.  Oursbourn, 259 S.W.3d at
175.  Once a question is raised, the trial court must hold a hearing outside of
the presence of the jury to decide whether the defendant’s statement was
voluntary.  Id. at 175.  The trial court must make written findings of
fact and conclusions of law in support of its ruling.  Id. at
175 n.55.  If the trial court finds that the statement was voluntary, it will
be admitted, and the defendant may offer evidence before the jury that the
statement was not, in fact, voluntary.  Id. at 175.  If the defendant
does so, the trial court must give the jury a voluntariness instruction.  Id.


Evanoff
does not point to any place in the record where a question was raised as to the
voluntariness of his statements.  The trial court did not hold a hearing on the
voluntariness of his statements, and nothing in the record shows that Evanoff
ever requested a hearing.  Evanoff’s motion to suppress makes no mention of Article
38.22.  The trial court did hold a hearing on Evanoff’s motion to suppress, but
it does not appear that the parties litigated whether Evanoff’s statements were
voluntary under Section 6.  The record contains no written findings of
fact or conclusions of law in support of any ruling on voluntariness, as would
be required by the statute.  See Oursbourn,
259 S.W.3d at 175 n.55 (“The need for written findings [of fact] should alert
the parties and trial judge to the need for a general voluntariness jury instruction.”). 
Finally, no evidence was presented to the jury that Evanoff’s statements were
not voluntary.  

An
appeals court may not overturn a trial court’s decision on a legal theory not
presented to the trial court.  Vasquez v. State, 225 S.W.3d 541, 543
(Tex. Crim. App. 2007).  Because there is no indication that the parties ever
raised a question as to the voluntariness of Evanoff’s statements or actually
litigated those statements, we cannot say that the trial court erred by failing
to submit an instruction to the jury under Section 6.

Article
38.22, section 7, provides for a jury instruction to determine if the defendant
was adequately warned of his rights and knowingly and intelligently waived
those rights in cases where the defendant made a statement as a result of a
custodial interrogation.  For the purposes of this section, four general
situations may constitute custody:  (1) the suspect is physically deprived of
his freedom of action in any significant way; (2) law enforcement officers tell
the suspect he is not free to leave; (3) law enforcement officers create a
situation that would lead a reasonable person to believe that his freedom of
movement has been significantly restricted; and (4) there is probable cause to
arrest the suspect, and law enforcement officers do not tell the suspect he is
free to leave.  Gardner v. State, 306 S.W.3d 274, 294 (Tex. Crim. App.
2009).  To determine whether a suspect is in custody, the question is whether,
under the facts and circumstances of the case, a reasonable person would have
felt that he or she was not at liberty to terminate the interrogation and
leave.  Nguyen v. State, 292 S.W.3d 671, 678 (Tex. Crim. App. 2009).  An
instruction is required when there is a genuine factual dispute regarding: (1)
law enforcement’s compliance with the statutory warnings under Tex. Code Crim. Proc. Ann. art. 15.17
(Vernon Supp. 2010) and Article 38.22 and (2) the voluntariness of the
defendant’s waiver of his rights.  Oursbourn, 259 S.W.3d at 176.   To
demonstrate that a genuine factual dispute exists, “[t]he defendant must offer
evidence that, if credited, would create a reasonable doubt as to a specific
factual matter essential to the voluntariness of the statement.”  See id.
at 176-77.  If there is no disputed factual issue, the legality of the conduct
is determined by the trial court alone as a question of law.  See id.
176-78.   The procedures for obtaining a jury instruction under Article 38.22,
section 7 are the same as those under Section 6, including the requirements of
a hearing outside of the presence of the jury and the entry of written
findings.  Id. at 176.  

Evanoff’s
motion to suppress did not raise the issue of compliance with Miranda[5]
or the statutory warnings under Article 38.22, but the parties addressed the
issue of compliance with Miranda at the hearing on the motion to
suppress, although they made no mention of Article 38.22.  Sergeant Baker
testified at the suppression hearing that, after subduing Evanoff, he asked him
where the cocaine was before notifying him of his Miranda rights.  Evanoff
argued that the trial court should suppress “the statements, specifically the
statement of ‘where is the dope.’  He said he swallowed it.  I think that’s
most certainly an interrogating questioning that was asked when he was lying on
his stomach in handcuffs, and they could have Mirandized him before that.”

Assuming
that the issue was adequately brought to the attention of the trial court, the
evidence before the jury did not present a genuine factual dispute as required
to obtain an instruction.  During the State’s direct examination, Sergeant
Baker stated that the police provided Evanoff with Miranda warnings
after they brought him to the police cruiser.  The DVD of the stop was played
for the jury.  Approximately sixteen minutes into the DVD, the police provided
Evanoff with Miranda warnings after they brought him to the police
cruiser.  Thus, the parties generally agreed on when Miranda warnings
were provided.  The evidence presented to the jury did not provide a genuine
factual dispute on this issue, and the legality of the conduct was to be
determined by the trial court alone as a matter of law.  See Oursbourn,
259 S.W.3d at 176-78 (providing in the context of an instruction under Tex. Code Crim. Proc. Ann. art. 38.23
(Vernon 2005) that “if there is no disputed factual issue–if there is a video
definitively showing that the officer did or did not hold a gun to the
defendant’s head–the legality of the conduct is determined by the trial judge
alone, as a question of law.  The legal question would never go to the
jury.”).  

Accordingly,
the trial court did not err by failing to provide a jury instruction under Article
38.22, section 7.  Evanoff’s fourth issue is overruled.  

VI. 
Allocution

In
his fifth issue, Evanoff contends that the trial court erred by failing to
pronounce sentence against him and by failing to grant him the right of
allocution before pronouncing sentence.

Sentence
shall be pronounced in the defendant’s presence.  Tex. Code Crim. Proc. Ann. art. 42.03 (Vernon Supp. 2010).
The sentence is that part of the judgment that orders punishment be carried
into execution in the manner prescribed by law.  Tex. Code Crim. Proc. Ann. art. 42.02 (Vernon 2006). Before
pronouncing sentence, the trial court shall ask the defendant whether he can
provide any reason why sentence should not be pronounced against him.  Tex. Code Crim. Proc. Ann. art. 42.07
(Vernon 2006).  The only reasons which, if proven, would prevent the trial
court from pronouncing sentence are (1) that the defendant has received a
pardon from the proper authority, (2) that the defendant is incompetent to
stand trial, and (3) that the defendant is not the person who was convicted.  Id.

At
the end of the punishment hearing, the trial court proceeded as follows: 

            THE
COURT:  Okay.  For purposes of the record, in 31,959 and 31,960, the Court
finds the enhancement paragraphs to have been proven, and hereby finds those to
have been true.

 

            Cause
No. F31,960, the Court will impose a sentence of 20 years confinement in the
Institutional Division of the Texas Department of Criminal Justice, assess a
fine of $10,000 and all costs of court.  

 

            Cause
No. F31,959, the Court is going to impose a punishment of 60 years confinement
in the Institutional Division of the Texas Department of Criminal Justice, fine
of $10,000 and all costs of court.  

 

            Mr.
Evanoff, you are hereby remanded to the custody of the Sheriff of Stephens
County, Texas, until he can obey and carry out the directions and instructions
of this sentence.  You will receive credit for time periods of detention as
provided by law.  

 

            Evanoff
argues that the trial court erred by not pronouncing sentence.  He alleges that
the trial court merely stated that it would “impose a sentence” in one case and
“impose a punishment” in the other.  Evanoff made no objection regarding this
issue at trial, nor has he demonstrated how he was harmed by any error.  Moreover,
the trial court did in fact pronounce sentence.  Within Evanoff’s presence, the
trial court announced the punishments assessed in each of the two cases and
ordered Evanoff remanded to the custody of the Sheriff of Stephens County until
the punishments could be executed.  See Casias v. State, 503
S.W.2d 262, 264 (Tex. Crim. App. 1973) (“There appears no fixed or inflexible
form to be used for the sentencing.  The one mandatory provision is that it
‘shall be pronounced in the presence of the defendant.’”). 

            Second,
Evanoff contends that the trial court erred by failing to grant him the right
of allocution before pronouncing sentence.  Again, Evanoff did not object to
the trial court’s omissions.  Nor has he ever alleged the existence of any of
the statutory reasons set out in Article 42.07 that would have prevented
sentence from being pronounced.  Thus, no error has been preserved for review. 
Tenon v. State, 563 S.W.2d 622, 623 (Tex. Crim. App. 1978); Eisen v.
State, 40 S.W.3d 628, 637 (Tex. App.—Waco 2001, pet. ref’d).  Evanoff’s
fifth issue is overruled.  

VII. 
Ineffective Assistance of Counsel

In
Issues Six, Seven, and Eight, Evanoff argues that he was denied effective
assistance of counsel when trial counsel failed to object to evidence that violated
his right to confrontation, failed to request an instruction on the voluntariness
of his statements to police, and failed to object to the denial of his right of
allocution.

The
standard for ineffective assistance of counsel is the same under the Texas and United
States Constitutions.  Hernandez v. State, 726 S.W.2d 53, 56-57 (Tex.
Crim. App. 1986).  A court must first determine whether Evanoff has shown that
counsel’s representation fell below an objective standard of reasonableness and,
if so, determine whether there is a reasonable probability that the result
would have been different but for counsel’s errors.  Strickland v.
Washington, 466 U.S. 668, 687 (1984); Thompson v. State, 9 S.W.3d
808, 812 (Tex. Crim. App. 1999).  The appellant has the burden of proving by a
preponderance of the evidence that counsel was ineffective.  Thompson,
9 S.W.3d at 813.  In considering whether counsel’s representation fell
below an objective standard of reasonableness, a court must indulge in a strong
presumption that counsel’s actions fell within the range of reasonable
professional assistance.  Id.

A. 
Right to Confrontation. 

In
Issue Six, Evanoff argues that trial counsel provided ineffective assistance by
failing to object to evidence that violated his right to confrontation.  Evanoff
argues that he should have had the opportunity to confront Ron Wagman, the case
contact person from the DPS Crime Laboratory in Abilene who signed the
Laboratory Submission Form for the evidence seized from Evanoff, because Wagman
was involved in the chain of custody.  To show ineffective assistance of
counsel for failure to object during trial, Evanoff must show that the trial
court would have committed error by overruling the objection.  Vaughn v.
State, 931 S.W.2d 564, 566 (Tex. Crim. App. 1996).  

The
Sixth Amendment to the United States Constitution guarantees the right of an
accused in a criminal prosecution to confront the witnesses against him.  Lopez
v. State, 18 S.W.3d 220, 222 (Tex. Crim. App. 2000).  A primary interest
secured by the Confrontation Clause is the right of cross-examination.  Id. 
The Confrontation Clause bars out-of-court testimonial statements by a witness
unless the witness is unavailable to testify and the defendant had a prior
opportunity to cross-examine the witness.  Crawford v. Washington, 541
U.S. 36, 38 (2004). 

While
the United States Supreme Court has yet to define the outer boundaries of what
constitutes a testimonial out-of-court statement, it has identified three kinds
of statements that can be regarded as testimonial:  (1) ex parte in-court
testimony or its functional equivalent that declarants would reasonably expect
to be used prosecutorially; (2) statements contained in formalized testimonial
materials such as affidavits, depositions, prior testimony, or confessions; and
(3) statements that were made under circumstances that would lead an objective
witness reasonably to believe that the statement would be available for use at
a later trial.  Langham v. State, 305 S.W.3d 568, 576 (Tex. Crim. App.
2010).  Whether a particular out-of-court statement is testimonial is a
question of law.  De La Paz v. State, 273 S.W.3d 671, 680 (Tex. Crim.
App. 2008).  

Evanoff
cites two recent cases as extending the right to confrontation to documents
such as the Laboratory Submission Form at issue here.  In Melendez-Diaz v.
Massachusetts, 129 S.Ct. 2527, 2532 (2009), the United States Supreme Court
held that certificates of analysis attesting that a substance was cocaine were
testimonial statements subject to the Confrontation Clause.  The defendant was
charged with distributing and trafficking cocaine.  Id. at 2530.  Under
Massachusetts law, certificates of analysis were “prima facie evidence of the
composition, quality, and net weight” of the substance.  Id. at 2532 (quoting
Mass. Gen. Laws, ch. 111, § 3).  The Court held that these certificates were,
in fact, affidavits made under circumstances that would lead an objective
witness reasonably to believe that the statement would be available for use at
a later trial.  Id.  The Court, however, was quick to emphasize that “it
is not the case, that anyone whose testimony may be relevant in establishing
the chain of custody, authenticity of the sample, or accuracy of the testing
device must appear in person as part of the prosecution’s case.”  Id. at
2532 n.1.  Instead, “gaps in the chain [of custody] normally go to the weight
of the evidence rather than its admissibility.”  Id. (quoting United
States v. Lott, 854 F.2d 244, 250 (7th Cir. 1988)).   

In
Cuadros-Fernandez v. State, 316 S.W.3d 645, 648 (Tex. App.—Dallas 2009, no
pet.), the defendant was charged with the capital murder of a child under the
age of six.  DNA was swabbed from a cabinet door believed to have been involved
in the murder.  316 S.W.3d at 652.  The swab showed DNA from a major
contributor matched the defendant’s DNA profile.  Id.  The DNA report
was admitted into evidence without the analyst who prepared the report having
testified.  Id. at 654.  The Dallas Court of Appeals held that, because
the analyst prepared the report with knowledge that it would be available for
use at the defendant’s trial and because the State used the report as a
substitute for the analyst’s testimony concerning the DNA testing, the report’s
admission violated the Confrontation Clause.  Id. at 657-58.  

As
Evanoff admits, the Laboratory Submission Form at issue in this case merely
went to establishing chain of custody.  Breckenridge Chief of Police Larry
Mahan testified that the form “tells the DPS what we want done with this” and
that the form “is required to get this into the door at the lab.”  The Laboratory
Submission Form does not reveal the composition of the substance seized.  It
does not appear to make any statement that an objective witness reasonably
would believe would be available for use at a later trial, except other than
possibly for permissible chain of custody purposes.  See Langham,
305 S.W.3d at 576.  Thus, Evanoff has failed to prove that the trial court
would have committed error on the basis of the Confrontation Clause by
overruling an objection to the admission of the form without Wagman’s testimony. 
Evanoff’s sixth issue is, therefore, overruled.

B. 
Instruction on the Voluntariness of Statements.

In
his seventh issue, Evanoff argues that trial counsel was ineffective for
failing to request an instruction regarding the voluntariness of Evanoff’s
statements to Sergeant Baker.  As discussed above, Evanoff was not entitled to
a jury instruction under either Section 6 or 7 of Article 38.22.  Trial
counsel’s failure to request an instruction to which Evanoff was not entitled
is not ineffective assistance.  Evanoff’s seventh issue is overruled.  

C. 
Right of Allocution.

In
his eighth issue, Evanoff contends that trial counsel provided ineffective
assistance by failing to object to the denial of his statutory right of
allocution.  As explained above, the trial court must ask the defendant if
there is any reason why it should not pronounce sentence.   There are only
three reasons why sentence should not be pronounced:  (1) that the defendant
has received a pardon from the proper authority; (2) that the defendant is
incompetent to stand trial; and (3) that the defendant is not the person who
was convicted.  Article 42.07.

If
Evanoff’s trial counsel had objected to the trial court’s failure to grant
Evanoff his right of allocution and if the trial court had sustained that
objection, the trial court would have asked Evanoff if he had any reason why
sentence should not be pronounced.  As there are only three such reasons, and
Evanoff has never shown that any of them are applicable to his case, the trial
court would have proceeded to pronounce sentence.  

However,
Evanoff argues that trial counsel’s failure to object harmed him because his
failure might cause this court to hold that the issue has been waived.  Even if
trial counsel had objected, the trial court had overruled the objection, and this
court was to sustain error and find harm, the remedy would be to reverse and remand
the case for allocution and pronouncement of sentence.  See Tenon, 563
S.W.2d at 624.  Because Evanoff cannot show that any reason exists why sentence
should not be imposed, if we remanded the trial court would still simply proceed
to pronounce his sentence.  See id. (“Surely appellant would not have
this court reverse this cause and order a new sentencing so that when the court
asks her if she has anything to say why sentence should not be pronounced
against her she can then answer ‘Nothing.’”). 

Evanoff,
therefore, has not shown that there is a reasonable probability that the result
would have been different but for his trial counsel’s failure to object to the
denial of his statutory right of allocution.  Evanoff’s eighth issue is overruled.    


VIII. 
Conclusion

The judgment of
the trial court is affirmed.  

            

 

RICK STRANGE

                                                                                    JUSTICE

 

April 14, 2011

Do not publish. 
See Tex. R. App. P. 47.2(b).

Panel consists of:  Wright, C.J.,

McCall, J., and Strnge, J.









                [1]No. 11-09-00317-CR.

 





                [2]No. 11-09-00318-CR.





[3]Jackson v. Virginia, 443 U.S. 307 (1979).

 





[4]Clewis v. State,
922 S.W.2d 126 (Tex. Crim. App. 1996). 





[5]
Miranda v. Arizona, 384 U.S. 436 (1966).