PD-1331&1332-15

PD-1331&1332-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 10/16/2015 10:42:26 AM
Accepted 10/16/2015 2:44:04 PM
ABEL ACOSTA
CLERK

In the
Court of Criminal Appeals of Texas

Cause Nos. 01-14-00744-CR & 01-14-00745-CR
In the
Court of Appeals for the First District of Texas
at Houston

Cause Nos. 1326112 and 1383738
In the 248th District Court
Of Harris County, Texas

ARTAVIOUS DEON HOLLINS
*Appellant*

v.

THE STATE OF TEXAS
*Appellee*

PETITION FOR DISCRETIONARY REVIEW

Casey Garrett
4010 Bluebonnet, Ste. 204
Houston, Texas 77025
(713) 228-3800
Texas Bar No. 00787197
Casey.garrett@sbcglobal.net

FILED IN
COURT OF CRIMINAL APPEALS

October 16, 2015

ABEL ACOSTA, CLERK

## IDENTITY OF PARTIES AND COUNSEL

Appellant: Artavious Deon Hollins

Counsel for Appellant at Trial:
        Mr. T. B. Todd Dupont, II
        Texas State Bar No. 24004289
        3700 North Main Street
        Houston, Texas 77009
        713-682-1800
        Mr. Mike Driver
        Texas Bar No. 24069634
        402 Main, 4th Floor
        Houston, Texas 77002
        713-417-4809

Counsel for Appellant on Appeal:
        Casey Garrett
        4010 Bluebonnet, Suite 204
        Houston, Texas 77025
        Texas Bar No. 00787197
        713-228-3800
        Casey.garrett@sbcglobal.net

Counsel for the State at Trial:
        John Wakefield
        Assistant District Attorney
        Texas Bar No. 24054125
        1201 Franklin Street, Suite 600
        Houston, Texas 77002
        713-755-6881

Counsel for the State on Appeal:
        Harris County District Attorney's Office
        Appellate Division
        1201 Franklin, Suite 600
        Houston, Texas 77002
        (713) 755-5800

Trial Judge: The Honorable Katherine Cabaniss

# TABLE OF CONTENTS

TABLE OF CONTENTS.........................................................................................................3

INDEX OF AUTHORITIES..................................................................................................4

STATEMENT REGARDING ORAL ARGUMENT....................................................5

STATEMENT OF THE CASE.............................................................................................5

STATEMENT OF PROCEDURAL HISTORY...........................................................5

QUESTIONS PRESENTED FOR REVIEW ...............................................................6

REASONS FOR REVIEW ....................................................................................................6

PRAYER.........................................................................................................................................11

CERTIFICATE OF SERVICE ..........................................................................................12

# INDEX OF AUTHORITIES

**Cases**

*Cantu v. State*, 395 S.W.3d 202 (Tex. App.—Houston [1st Dist.] 2012)............................ 9

*Forest v. State*, 989 S.W.2d 365, 368 (Tex. Crim. App. 1999).......................................... 9

*Wiley v. State*, 74 S.W.3d 399, 405 (Tex. Crim. App. 2002) ............................................ 7

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument would not be helpful to the resolution of this case.

## STATEMENT OF THE CASE

Mr. Artavious Hollins was charged by indictment with the felony offense of murder (R.R.3 – 14). He was also indicted with the felony offense of tampering with evidence (R.R.3 – 14). Mr. Hollins pled not guilty to both of the charges and the cases were tried together before a jury (R.R.3 – 14). The jury found Mr. Hollins guilty of murder and guilty of tampering with evidence (C.R. 308). The jury assessed punishment at confinement for life in the Texas Department of Criminal Justice, Institutional Division, in the murder case. The jury assessed punishment at confinement for twenty-five years in the Texas Department of Criminal Justice, Institutional Division, in the tampering case. Mr. Hollins filed timely notice of appeal.

## STATEMENT OF PROCEDURAL HISTORY

The Court of Appeals filed a memorandum opinion affirming both convictions on August 27, 2015. No motion for rehearing was filed. Pursuant to Rule 68.2 of the Texas Rules of Appellate Procedure, this Petition for Discretionary Review should be filed thirty days after the day the court of appeals filed its opinion. A motion for extension of time was filed within fifteen days of the due date.

## QUESTIONS PRESENTED FOR REVIEW

Is evidence sufficient to support a murder conviction when the witnesses for the State and the defense agree that the accused was not the aggressor, the accused repeatedly declined to fight with the complainant and retreated into his home, the complainant went into his home after instigating a yelling match with him, and the accused neither intended nor even knew the complainant had been shot?

Is evidence sufficient to support a conviction for tampering when the testimony showed the accused discarded clothing and a weapon in close proximity to the location where the incident took place, and no evidence indicated by words or deeds that accused intended to conceal or alter evidence?

## REASONS FOR REVIEW

The decision of the court of appeals conflicts with applicable decisions of the Court of Criminal Appeals and the Supreme Court of the United States.

## APPELLANT'S FIRST QUESTION FOR REVIEW

Is evidence sufficient to support a murder conviction when the witnesses for the State and the defense agree that the accused was not the aggressor, the accused repeatedly declined to fight with the complainant and retreated into his home, the complainant went into his home after instigating a yelling match with him, and the accused neither intended nor even knew the complainant had been shot?

To sustain a conviction for murder the evidence must demonstrate that the person (1) intentionally or knowingly (2) caused the death of an individual. Tex. Penal Code Ann. sec. 19.02 (b) (1). A person acts "intentionally" or with intent with respect to the nature of his conduct or to a result of his conduct when it is "his conscious objective or desire to engage in the conduct or cause the result." Tex.

6

Penal Code Ann. sec. 6.03(a); *Wise*, 364 S.W.3d at 903. A person acts knowingly or with knowledge of the nature of his conduct or circumstances "when he is aware of the nature of his conduct or that the circumstances exist." Tex. Penal Code Ann. sec. 6.03(b).S.W.3d at 659-62; *Wiley v. State*, 74 S.W.3d 399, 405 (Tex. Crim. App. 2002).

In the instant case, all the witnesses agreed, both the witnesses for the State and the ones for the defense, that Shae instigated a conflict between Mr. Hollins and Derrick Williams and Mr. Hollins repeatedly retreated into his apartment from this conflict. Tranea Jones and Andre Lewis both testified that Mr. Hollins initially got into a verbal argument with Shae, but he consistently retreated into his apartment any time the argument escalated or any time it looked like someone was trying to take it to the next level. All the witnesses agree that Shae called D over to the complex to harass and Mr. Hollins and damage his apartment, and everyone agreed Shae and D threw rocks, sticks and other items at the doors and windows of the apartment, taunting him to come out. Lewis, Jones and Mr. Hollins all testified that Mr. Hollins stayed securely inside his apartment on that occasion.

On the day of the shooting, likewise all the witnesses' agree that Mr. Hollins did not start or cause any arguments and that Shae, Williams and Lewis were being aggressive toward Mr. Hollins. Mr. Lewis testified that every time Mr. Hollins would begin to come out toward the courtyard and the other residents began escalating the fight or walking toward him, he would immediately retreat back into his home. Tranea Jones testified that Derrick Williams threatened to

7

"whoop his behind," and Mr. Hollins continued to retreat until eventually he began saying things like, "well, come on, come on then," and eventually said, "come into my house." Tranea Jones referred to this statement as an "invitation," but her testimony made clear that she understood it to be in the nature of a dare, more of a way to call the bluff of Derrick Williams and Andre Lewis by daring them to follow Mr. Hollins into his own home. In fact, Tranea got Andre Lewis involved because she could tell that Derrick Williams was pursuing the conflict and heading toward Mr. Hollins' apartment.

All the witnesses testified that there was a struggle for a gun inside Mr. Hollins' apartment. Tranea Jones testified, "I was already around there because when Artavious realized that he had shot Derrick – because I don't think Artavious knew he shot Derrick until he seen Derrick when Derrick said, "it didn't have to go like this." (R.R.3 – 167). Mr. Hollins also testified he didn't know if anyone was hurt when he ran away from the scene. He knew the gun had gone off, and he knew Derrick Williams had fallen somewhere outside of his apartment, but he was not aware that Derrick Williams had been shot.

Despite the inconsistencies in testimony, the witnesses at trial made several things clear: 1) Mr. Hollins was not the aggressor in any of the incidents at Casa Nube Apartments; 2) Mr. Hollins repeatedly declined to fight with the neighbors who were trying to instigate a conflict and instead retreated into his home; 3) Derrick Williams and Andre Lewis went into his home in the midst of a yelling match when at least one other resident believed a fight was about to start; and 4)

Mr. Hollins did not intend to shoot or even know he'd shot Derrick Williams after the tussle in his apartment.

Firing a gun in the direction of an individual is an act clearly dangerous to human life within the meaning of the murder statute. *Forest v. State*, 989 S.W.2d 365, 368 (Tex. Crim. App. 1999). Struggling for control of a gun, however, when two aggressors have followed you into your own apartment after days of verbal harassment and property damage, is not an act clearly dangerous to human life. In *Cantu v. State*, 395 S.W.3d 202 (Tex. App.—Houston [1st Dist.] 2012), this Court rejected the defendant's claims that the gun was accidentally discharged while he tried to take it from the defendant. In that case, however, expert testimony showed that the defendant had staged the evidence. In the instant case, by contrast, even the State's own witnesses believed the gun accidentally discharged, and all the witnesses agreed that the complainant and Mr. Hollins struggled for control of the gun.

## APPELLANT'S SECOND QUESTION FOR REVIEW

> Is evidence sufficient to support a conviction for tampering when the testimony showed the accused discarded clothing and a weapon in close proximity to the location where the incident took place, and no evidence indicated by words or deeds that accused intended to conceal or alter evidence?

The evidence must demonstrate that the person (1) knowing that an investigation or official proceeding is pending or in progress (2) alters, destroys or conceals any thing with intent to impair its availability as evidence. Tex. Penal Code Ann. sec. 37.09(a). (West 2014). A person acts "intentionally" or with intent

9

with respect to the nature of his conduct or to a result of his conduct when it is "his conscious objective or desire to engage in the conduct or cause the result." Tex. Penal Code Ann. sec. 6.03(a); *Wise*, 364 S.W.3d at 903. A person acts knowingly or with knowledge of the nature of his conduct or circumstances "when he is aware of the nature of his conduct or that the circumstances exist." Tex. Penal Code Ann. sec. 6.03(b).

Officer Christopher Castellani testified he was in pursuit of a man wearing a white shirt and a black hat (R.R.3 – 48). He said another officer found a white shirt and a black hat in a different location (R.R.3 – 48). He said later that day a dog found a firearm in the bushes not far from where the shirt and hat were found (R.R.3 – 54). The dog found a pink Palmer frame pistol with a black slide (R.R.3 – 71). The distance between the pistol and the clothing was a matter of seconds on foot (R.R.3 – 71). A tank top style tshirt was found at the scene (R.R.3 – 94). All the items were in the vicinity and very close to the apartment complex where the shooting took place (R.R.3 – 101).

The investigating officers found all of the evidence in locations very close to where Mr. Hollins had been confronted by a group of angry neighbors. The evidence merely showed that he discarded the evidence as he fled the scene, not that he concealed or altered or otherwise attempted to prevent the investigation from proceeding. To the contrary, investigators found a tank top next to the body of Derrick Williams. The pistol in this case was found steps from where Mr. Hollins' other clothing was found. The State was unable to demonstrate that Mr.

10

Hollins concealed any evidence and unable to demonstrate that he intended to conceal any evidence. The evidence at trial was legally insufficient to support a conviction for tampering and the case should be reversed and Mr. Hollins should be acquitted.

## PRAYER

Appellant respectfully prays this Honorable Court to grant his petition for discretionary review.

Respectfully submitted,

____/s/ Casey Garrett____
Casey Garrett
4010 Bluebonnet, Ste. 204
Houston, Texas 77025
(713) 228-3800
Texas Bar No. 00787197

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing instrument has been supplied

to the Harris County District Attorney's Office in accordance with the rules of

appellate procedure.

\_\_\_\_/s/ Casey Garrett\_\_\_\_
Casey Garrett
4010 Bluebonnet, Ste. 204
Houston, Texas 77025
(713) 228-3800
Texas Bar No. 00787197

In the
Court of Criminal Appeals of Texas

Cause Nos. 01-14-00744-CR & 01-14-00745-CR
In the
Court of Appeals for the First District of Texas
at Houston

ARTAVIOUS DEON HOLLINS
*Appellant*

v.

THE STATE OF TEXAS
*Appellee*

CERTIFICATE OF COMPLIANCE

Casey Garrett
4010 Bluebonnet, Ste. 204
Houston, Texas  77025
(713) 228-3800
Texas Bar No. 00787197

This is the certify that the Petition for Discretionary Review filed in the above-numbered cause has 2.042 words in compliance with Rule 9 of the Texas Rules of Appellate Procedure.

_____/s/ Casey Garrett_____
Casey Garrett
4010 Bluebonnet, Ste. 204
Houston, Texas  77025
(713) 228-3800
Texas Bar No. 00787197



# JUDGMENT

## Court of Appeals

## First District of Texas

NO. 01-14-00744-CR

ARTAVIOUS DEON HOLLINS, Appellant

V.

THE STATE OF TEXAS, Appellee

Appeal from the 248th District Court of Harris County. (Tr. Ct. No. 1326112).

This case is an appeal from the final judgment signed by the trial court on August 29, 2014. After submitting the case on the appellate record and the arguments properly raised by the parties, the Court holds that the trial court's judgment contains no reversible error. Accordingly, the Court **affirms** the trial court's judgment.

The Court **orders** that this decision be certified below for observance.

Judgment rendered August 27, 2015.

Panel consists of Justices Jennings, Bland, and Brown. Opinion delivered by Justice Jennings.



# JUDGMENT

## Court of Appeals

## First District of Texas

NO. 01-14-00745-CR

ARTAVIOUS DEON HOLLINS, Appellant

V.

THE STATE OF TEXAS, Appellee

Appeal from the 248th District Court of Harris County. (Tr. Ct. No. 1383738).

This case is an appeal from the final judgment signed by the trial court on August 29, 2014. After submitting the case on the appellate record and the arguments properly raised by the parties, the Court holds that the trial court's judgment contains no reversible error. Accordingly, the Court **affirms** the trial court's judgment.

The Court **orders** that this decision be certified below for observance.

Judgment rendered August 27, 2015.

Panel consists of Justices Jennings, Bland, and Brown. Opinion delivered by Justice Jennings.

Opinion issued August 27, 2015



In The

# Court of Appeals

For The

# First District of Texas

———————————

NO. 01-14-00744-CR
NO. 01-14-00745-CR

———————————

**ARTAVIOUS DEON HOLLINS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

On Appeal from the 248th District Court
Harris County, Texas
Trial Court Case Nos. 1326112 and 1383738

# MEMORANDUM OPINION

A jury found appellant, Artavious Deon Hollins, guilty of the offenses of murder[1] and tampering with physical evidence.[2] After finding true the allegations in two enhancement paragraphs in each indictment that appellant had been twice previously convicted of felony offenses, the jury assessed his punishment at confinement for life for the offense of murder and twenty-five years for the offense of tampering with physical evidence. The trial court ordered that the sentences run concurrently, and it entered an affirmative finding that appellant used a deadly weapon in the commission of the offense of murder. In three issues, appellant contends that the evidence is legally insufficient to support his convictions and the trial court erred in admitting certain testimony.

We affirm.

## Background

Tranea Jones testified that when she awoke in her apartment on the morning of November 5, 2011, she heard the complainant, who lived in a nearby apartment building, outside "laughing, drinking, and talking with 'Shae,'" her neighbor. Appellant, who lived in the apartment below her, then came out of his apartment, and he and the complainant "started yelling comments at each other." This

---

[1] *See* TEX. PENAL CODE ANN. § 19.02 (Vernon 2011); appellate cause no. 01-14-00744-CR; trial court cause no. 1326112.

[2] *See* TEX. PENAL CODE ANN. § 37.09(a)(1) (Vernon Supp. 2014); appellate cause no. 01-14-00745-CR; trial court cause no. 1383738.

behavior continued off and on throughout the day. Eventually, Jones's boyfriend, Andre Lewis, who lived with her, went downstairs to appellant's apartment to diffuse the situation. Jones, who had followed Lewis, heard appellant, who was standing inside his apartment with the front door open, tell the complainant and Lewis to "come on" and "come in," "like he was going to use it for self-defense." Jones then saw the complainant walk into appellant's apartment, where he began "tussling" with appellant. Jones explained that although neither appellant nor Lewis had a weapon, appellant "pulled a gun," which was "chrome" and "pink," from "behind his back," "cock[ed] it," and said, "Man, you up in my house." Jones then saw the complainant attempt to take the gun from appellant, heard a "pop and click," and then saw the complainant come back outside and fall to the ground. Jones "didn't think" that appellant realized that he had shot the complainant until he came out and saw him. The complainant then said, "It didn't have to go like this." Appellant, who was in a white shirt and black hat, then locked his apartment door and "ran off."

Jones further explained that about a week before the shooting, appellant had begun quarreling with his neighbors. On one occasion, two of her neighbors, "Shae" and another neighbor, had thrown "wood boards and rocks" through appellant's apartment windows. And they had kicked his door, trying to "lure"

3

appellant outside. Jones recalled having seen a footprint on appellant's door thereafter.

Lewis testified that about a week before the shooting, he had intervened in a disagreement between appellant and Jones and Shae. Appellant told Lewis that he was "going to call his people." And, thirty minutes later, when "cars started pulling up" into the apartment complex, Lewis, believing that his life was in danger, went to his apartment and put his "pistol" in his pocket. After "the cars" left the apartment complex without incident, Lewis went to appellant, who was standing outside, and told him to go back in his apartment and leave Jones and Shae alone. Lewis explained that he had exhibited his handgun as he talked with appellant. At about 8:30 or 9:00 p.m., Shae's boyfriend, "D," arrived and "bang[ed]" on appellant's door, trying to get him to come outside. Lewis then heard appellant open his door, exchange words with D, and then close the door. Lewis then heard D, who was wearing Nike "Air Force 1" athletic shoes, kick appellant's door. D also picked up a "log" and threw it through appellant's "patio window." After appellant did not open the door, D left.

On November 5, 2011, when Lewis heard appellant and the complainant arguing, he went downstairs to intervene. Lewis did not have his handgun with him at the time, and the complainant did not have a weapon. When appellant "invited" Lewis and the complainant into his apartment, Lewis thought that

4

appellant wanted to talk. As soon as they were inside, however, appellant said, "You in my house," and he pulled a "pink and chrome" handgun from his back, "cock[ed] it," and began running at them. After appellant hit the complainant's face with the handgun, the complainant "grabbed" either the handgun or appellant's "wrist" or "hand." The "gun went off," and the complainant ran out of the apartment and fell to the ground. Appellant then picked up the handgun, locked his door, and "took off."

Rafael Narvaez testified that on November 5, 2011, appellant came into his second-hand clothing store and purchased a pair of shorts, a shirt, and tennis shoes. Appellant changed into his new clothes and paid Narvaez for a ride to a nearby shopping center.

Houston Police Department ("HPD") Officer C. Castellani testified that on November 5, 2011, he was dispatched to investigate the shooting of the complainant. He received a description of the suspect as a "black male wearing a white shirt [and] black hat." When he arrived at the scene of the shooting, Castellani learned that HPD officers had found, about a "tenth of a mile" away from the scene, a "white button down shirt" and black baseball cap in a ditch next to a building.

HPD Officer M. Barnette, assigned to HPD's canine unit, testified that he was dispatched to the scene of the shooting to locate appellant, who had fled. His

dog found, under a bush "30 feet" from the hat and shirt, a "pink Palmer frame pistol with a black slide."

HPD Officer A. Holmes testified that when he arrived at the scene at around 5:15 p.m., about two hours after the shooting, he found a "muddy" print of a right shoe on the front door of appellant's apartment. He noted that there was "no mud in the area" and the "footprint was dry." Although the print matched that of the sole of the complainant's right shoe, which was a Nike "Air Jordan" athletic shoe, it was also consistent with that of a Nike "Air Force 1" athletic shoe. Holmes further identified the recovered firearm as a "semi-automatic 9 millimeter pistol." And he noted that a "spent casing was found in the chamber."

S. Doyle, M.D., a medical examiner at the Harris County Institute of Forensic Sciences, testified that her autopsy of the complainant's body revealed that a bullet entered the left side of his chest under his armpit and exited on the right side of his chest. The cause of his death was a "gunshot wound to the torso." And, based on the wounds inflicted, she opined that the complainant was shot at close range, meaning from "less than three feet away."

Appellant testified that the week before the shooting, he had a disagreement with his neighbor, Shae, because she, without his permission, had given his telephone number to Jones. Appellant explained that Jones's boyfriend, Lewis, was "extremely crazy jealous." While appellant was arguing with Shae, Jones

walked up. Appellant then ended the discussion and went into his apartment. Later that day, Lewis questioned appellant about the argument, "act[ed] like he want[ed] to fight," and "displayed his little handgun."

Later that evening, appellant heard a loud banging on his front door. When he opened it, he saw Jones, Shae, Lewis, and a person that he had not seen before standing outside his door. They told him to come outside, and, after he refused and slammed his door, someone started throwing "bricks and sticks" through his windows. Appellant then called for emergency assistance. Once law enforcement officers arrived, however, he was unable to fully identify those involved by their last names. Appellant and his wife then went to stay in a hotel for a few days.

On the afternoon of November 5, 2011, appellant, having returned to his apartment, saw Shae and "a bunch of people" standing around outside their apartments after several of them had received eviction notices. Later, appellant asked a neighbor to drive his wife to her appointment at a nail salon. As they were leaving, the complainant approached appellant at his front porch and tried to say something. When appellant told him to leave, the complainant responded, "Oh, you think you tough, huh?" The complainant was "mad" and continued "making statements" toward appellant. Appellant then saw his wife off and went back inside his apartment.

About an hour later, appellant heard a noise, but when he looked outside, he did not see anything. He noted that although he had locked the gate to the fence surrounding his front porch, he had not locked his front door. He then called a friend, threw his cellular telephone on his couch, and went into a washroom. When he came out, the complainant and Lewis were in his apartment. Appellant emphasized that he had not "provoke[d]" or "invite[d]" the complainant and Lewis to come into his apartment. As appellant reached for his telephone, the complainant "pulled out his gun," which appellant described as pink in color, and "tried to hit" him with it. Appellant, who noted that both the complainant and Lewis "had guns," "ended up snatching [the complainant's gun] away from him." "After that, a loud bang went off." The complainant and Lewis "backed out together," and the "pink gun" landed on the ground. Lewis then "slung" the complainant to the ground and "took off."

Appellant, afraid that Lewis was "going to go get somebody" to "come back and kill [him]," "grabbed the firearm that was laying on the ground" and his telephone, locked his front door, and ran. He admitted that while he was running, he threw away his shirt, hat, and the firearm. Because he was afraid that he was not going to "make it . . . down the street," he went into a second-hand clothing store and purchased a new shirt, shorts, and shoes. He then paid the store owner to drive him to a parking lot near his wife's nail salon. He and his wife then stayed

8

with a relative in Dallas until he was later arrested. Appellant explained that at the time he fled, he did not know that the complainant had been shot. And he noted, "I wasn't trying to shoot him, but I guess I did sho[o]t him." Appellant asserted that he was "trying to protect" himself from the complainant.

## Sufficiency of the Evidence

In his second issue in cause number 01-14-00744-CR, appellant argues that the evidence is "legally insufficient to support his conviction for murder" because it does not establish that he intended to shoot the complainant. He asserts that "even the State's own witnesses believed [that] the gun [had] accidentally discharged." In his sole issue in cause number 01-14-00745-CR, appellant argues that the evidence is legally insufficient to support his conviction for the offense of tampering with physical evidence because it does not establish that he actually concealed the handgun. He asserts that the "evidence merely showed that he discarded [it] as he fled the scene."

We review the legal sufficiency of the evidence by considering all of the evidence in the light most favorable to the jury's verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S. Ct. 2781, 2788–89 (1979); *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). Our role is that of a due process safeguard, ensuring only the rationality of the trier

of fact's finding of the essential elements of the offense beyond a reasonable doubt. *See Moreno v. State*, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988). We give deference to the responsibility of the fact finder to fairly resolve conflicts in testimony, weigh evidence, and draw reasonable inferences from the facts. *Williams*, 235 S.W.3d at 750. However, our duty requires us to "ensure that the evidence presented actually supports a conclusion that the defendant committed" the criminal offense of which he is accused. *Id.*

## Murder

A person commits the offense of murder if he (1) intentionally or knowingly causes the death of an individual or (2) intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual. TEX. PENAL CODE ANN. § 19.02(b) (Vernon 2011). Here, appellant stood accused under both theories, and the trial court instructed the jury accordingly. In response to the court's charge, the jury returned a general verdict of guilty. When a trial court submits alternative theories of conviction to a jury, and the jury returns a general verdict, we will uphold the verdict if the evidence is sufficient to support any one of the alternative theories. *See Sorto v. State*, 173 S.W.3d 469, 472 (Tex. Crim. App. 2005).

A person acts intentionally with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the

10

conduct or cause the result. TEX. PENAL CODE ANN. § 6.03(a) (Vernon 2011). A person acts knowingly with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result. *Id.* § 6.03(b); *Schroeder v. State*, 123 S.W.3d 398, 400 (Tex. Crim. App. 2003) ("Murder is a 'result of conduct' offense, which means that the culpable mental state relates to the result of the conduct, i.e., the causing of the death.").

Proof of a mental state almost always depends upon circumstantial evidence. *Smith v. State*, 56 S.W.3d 739, 745 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd). A jury may infer intent or knowledge from any facts that tend to prove its existence, including the acts, words, conduct of the accused, and the method of committing the offense. *Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004); *Hart v. State*, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002). A jury may infer the intent to kill from the use of a deadly weapon unless it would not be reasonable to infer that death or serious bodily injury could result from the use of the weapon. *Jones v. State*, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996). A firearm is a deadly weapon per se. TEX. PENAL CODE ANN. § 1.07(a)(17)(A) (Vernon Supp. 2014).

Here, Jones testified that appellant told the complainant and Lewis to come into his apartment "like he was going to use it for self-defense." After they entered, appellant "pulled a gun" from "behind his back" and "cocked it." And although appellant denied that the gun was his, he admitted that he held the gun

11

from which the shot was fired that caused the complainant's death. Dr. Doyle testified that the complainant's death was caused by a bullet, shot from "less than three feet away," entering the left side of his chest under his armpit and exiting through the right side of his chest. The use of a deadly weapon, itself, constitutes more than a "mere modicum" of evidence of intent to kill. *Moreno*, 755 S.W.2d at 868 n.3. And when, as here, "a deadly weapon is fired at close range, and death results, the law presumes an intent to kill." *See Childs v. State*, 21 S.W.3d 631, 635 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd).

Appellant asserts that although he fired the shot that killed the complainant, the evidence shows that the shooting was not intentional.[3] First, "[a]ll of the witnesses testified that there was a struggle for a gun inside [the complainant's] apartment." However, evidence of a struggle does not necessarily negate deliberate conduct. *See Turner v. State*, 805 S.W.2d 423, 428 (Tex. Crim. App. 1991). Notably, appellant's testimony reveals that it was "after" he had "snatch[ed]" the handgun "away from" the complainant that "a loud bang went off." This evidence supports an implied finding by the jury that appellant, at some point, aimed the handgun at the complainant and fired. *See Adanandus v. State*, 866 S.W.2d 210, 231 n.19 (Tex. Crim. App. 1993) ("The fact that the struggle[]

---

[3] Appellant does not contend that the evidence is legally insufficient to support the jury's implicit rejection of his self-defense claim. *See Washington v. State*, No. 01-08-00140-CR, 2009 WL 40168, at *1 (Tex. App.—Houston [1st Dist.] Jan. 8, 2009) (mem. op., not designated for publication).

12

occurred quickly does not amount to evidence that appellant did not have the intent to cause the death of the deceased at the moment he aimed his gun and fired.").

Further, appellant testified that after the shooting, he picked up the handgun and ran from the scene, discarding it and his shirt and hat as he ran. And he immediately purchased new clothing and shoes and then went to Dallas and stayed with a relative until he was arrested a month later. Evidence of flight and attempts to cover up guilt are relevant to show a defendant's consciousness of guilt. *Clayton v. State*, 235 S.W.3d 772, 780 (Tex. Crim. App. 2007) (holding factfinder may draw inference of guilt from circumstance of flight); *Robinson v. State*, 236 S.W.3d 260, 267 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd) (holding evidence of flight and intent to remain on run probative of consciousness of guilt); *Miller v. State*, 177 S.W.3d 177, 184 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) (defendant's flight immediately after shooting and attempts to hide evidence constituted circumstantial evidence of guilt).

Appellant asserts that he "didn't know if anyone was hurt when he ran away from the scene." He "knew the gun had gone off, and he knew [the complainant] had fallen somewhere outside of his apartment, but he was not aware that [the complainant] had been shot." Jones testified, however, that she "didn't think [appellant] knew he shot" the complainant *until* he saw him outside the apartment and the complainant said, "It didn't have to go like this." We must presume that

13

the jury resolved any conflicting inferences in favor of the verdict and defer to that resolution. *See Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Clayton*, 235 S.W.3d at 778.

Although appellant testified that he did not intend to kill the complainant, the jurors, as the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given their testimony, were free to believe or disbelieve all or any part of appellant's testimony. *See Sorto*, 173 S.W.3d at 475; *McKinny v. State*, 76 S.W.3d 463, 468–69 (Tex. App.—Houston [1st Dist.] 2002, no pet.).

Viewing all of the evidence in the light most favorable to the jury's verdict, we conclude that a rational trier of fact could have reasonably found that appellant intentionally or knowingly caused the death of the complainant. *See* TEX. PENAL CODE ANN. § 19.02(b). Accordingly, we hold that the evidence is legally sufficient to support appellant's conviction for the offense of murder.

We overrule appellant's second issue in cause number 01-14-00744-CR.

### *Tampering with Physical Evidence*

A person commits the offense of tampering with physical evidence if he, (1) knowing that an investigation or official proceeding is pending or in progress, (2) alters, destroys, or conceals any "thing," (3) with intent to impair its verity, legibility, or availability as evidence in the investigation or official proceeding. TEX. PENAL CODE ANN. § 37.09(a)(1) (Vernon Supp. 2014). This Court has

14

explained that the term "pending," as used in the statute, means "impending, or about to take place." *Lumpkin v. State*, 129 S.W.3d 659, 663 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd). Although "conceal" is not defined in the Penal Code, courts have held that it means to "hide" or to "remov[e] from sight or notice." *See Rotenberry v. State*, 245 S.W.3d 583, 588–89 (Tex. App.—Fort Worth 2007, pet. ref'd); *Hollingsworth v. State*, 15 S.W.3d 586, 595 (Tex. App.—Austin 2000, no pet.).

Here, the State alleged that appellant, "knowing that an investigation was pending," concealed a firearm "with intent to impair its availability as evidence in the investigation." The record reveals that immediately after the shooting, the complainant collapsed in front of appellant's apartment. Lewis testified that while he was applying pressure to the complainant's gunshot wound, he called for emergency assistance. Jones testified that when appellant saw the complainant "hit the ground," he had a look of panic on his face. And he "ran in his house," "did everything he had to do in seconds," then "locked his door, and . . . took off running out the gate by the office." She noted that appellant was wearing a white shirt and a hat.

Officer Castellani testified that while he was "en route" to the scene of the shooting, he received a description of the suspect as a "black male wearing a white shirt [and] black hat." When he arrived at the scene, Officer Lozano told him that

15

he had found a white "button down" shirt and black baseball cap in a ditch next to a building, about a tenth of a mile away from the scene of the shooting. Officer Barnette testified that his dog located, under a Ligustrum bush about thirty feet away from the shirt and hat, a "pink Palmer frame pistol with a black slide." He noted that none of the officers involved in the search had seen the handgun until the dog alerted on it. And Officer Rodriguez noted that it was dusk and "at least two officers" were in the ditch area before Barnette arrived with his dog. Rodriguez opined that "somebody [had] intentionally put [the firearm] underneath the bushes."

Appellant himself testified that after the shooting, he ran away with the handgun because a man had just been shot in his apartment and he knew that police officers would be coming to the scene. However, he explained that he did not "hide" the handgun under a bush. Rather, because "somebody was chasing" him, he "just threw everything."

Appellant argues that the evidence merely shows that he "discarded" the handgun as he fled the scene, not that he "concealed" it, because it was found just a few steps away from his hat and shirt. The jury was free, however, to take all of the evidence into account and believe or disbelieve any portion of appellant's testimony. *See Sorto*, 173 S.W.3d at 475. Again, we act only to ensure that the jury reached a rational decision. *See Moreno*, 755 S.W.2d at 867. And

16

"[c]ircumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012).

Based on the above evidence, the jury could have reasonably inferred that appellant, knowing that Lewis had seen him shoot the complainant and had already called for emergency assistance, and knowing that police officers were coming to the scene, knew that an investigation was "impending, or about to take place." *See* TEX. PENAL CODE ANN. § 37.09(a)(1); *Lumpkin*, 129 S.W.3d at 663. Further, because the handgun was found underneath a bush and only after a dog had performed a search of the area, the jury could have reasonably inferred that appellant concealed the handgun with intent to impair its availability as evidence. *See* TEX. PENAL CODE ANN. § 37.09(a)(1); *see also Bennett v. State*, No. 14-02-00647-CR, 2003 WL 21782524, at *2 (Tex. App.—Houston [14th Dist.] July 31, 2003, no pet.) (mem. op., not designated for publication) (noting officers' discovery of contraband hidden in tree moss only after dog alerted to tree constituted evidence of defendant's intent to conceal contraband).

Viewing the evidence in the light most favorable to the jury's verdict, we conclude that it could have reasonably found that appellant concealed the handgun. Accordingly, we hold that the evidence is legally sufficient to support his

conviction of the offense of tampering with physical evidence. *See* TEX. PENAL CODE ANN. § 37.09(a)(1).

We overrule appellant's sole issue in cause number 01-14-00745-CR.

## Officer Testimony

In his first issue in cause number 01-14-00744-CR, appellant argues that the trial court erred in admitting Officer Holmes's testimony that the mud on appellant's apartment door was dry because Holmes had "no way to determine, either through science or experience or any other method available to mankind, whether . . . the shoe print . . . was old or new." *See* TEX. R. EVID. 602.

We review a trial court's evidentiary rulings for an abuse of discretion. *Powell v. State*, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001). We will not disturb a ruling if it lies within the zone of reasonable disagreement and is correct under any theory of law applicable to the case. *Winegarner v. State*, 235 S.W.3d 787, 790 (Tex. Crim. App. 2007); *Pena v. State*, 441 S.W.3d 635, 644 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd). A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. TEX. R. EVID. 602. Evidence to prove personal knowledge may consist of the witness's own testimony. *Id.*

Specifically, appellant complains of the following exchange:

[State]:     Now let's—actually looking very closely at State's 17, what are we looking at there on the doorway?

18

[Holmes]: The dark spot is actually a muddy shoe print on the door.

[State]: Other than that muddy footprint on the doorway, was there any damage to that door?

[Holmes]: No.

. . . .

[State]: Let's take a closer look at the footprint. Now that particular footprint, that is a close-up of the footprint on the door?

[Holmes]: Correct.

[State]: It's very important, that day you were there what was the temperature like?

[Holmes]: It was cool and dry.

[State]: Had it been raining?

[Holmes]: No.

[State]: Was there any wetness in the ground?

[Holmes]: No.

[State]: Any mud nearby?

[Holmes]: No.

. . . .

[State]: *Had that mud footprint been there for a while?*

[Appellant]: *Objection, calls for speculation.*

[Trial Court]: *Sustained.*

19

| | |
|---|---|
| [State]: | *Based on your expertise as a CSU officer who has made scenes of these kinds and investigated scenes of all kinds of crimes, in your knowledge if you have it based on training and experience did you determine that this was old or not?* |
| [Appellant]: | *Objection as to that print that day.* |
| [Trial Court]: | *Overruled.* |
| [Holmes]: | *It had been there long enough to dry which typically means number of hours if not days.* |
| [State]: | When you were at the scene, it was less than 30 minutes after the call for the shooting death had been dropped, right? |
| [Holmes]: | I got there at 5:15. |
| [State]: | Okay. About an hour? |
| [Holmes]: | Not quite two hours. |
| . . . . | |
| [State]: | But at that point this was dry? |
| [Holmes]: | Yes, sir. |

(Emphasis added.)

The record reveals that appellant objected to the State's question regarding whether the "mud footprint had been there for a while" on the ground that it "call[ed] for speculation," and the trial court sustained the objection. After the State re-phrased its question, appellant stated, "Objection as to that print that day." And the trial court overruled his objection.

20

To preserve error, a complaint must be "made to the trial court by a timely request, objection, or motion that . . . state[s] the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context." TEX. R. APP. P. 33.1(a)(1)(A). If an objection is not specific, nothing is presented for review. *Pena v. State*, 353 S.W.3d 797, 807 (Tex. Crim. App. 2011). We hold that appellant's objection, "as to that print that day," was not specific and therefore did not preserve error for review. *See id.*

Further, to the extent that appellant asserts that the trial court erred in admitting Holmes's testimony that the footprint "had been there long enough to dry which typically means number of hours if not days," the record reveals that appellant did not object to this statement. Thus, nothing is preserved for our review. *See* TEX. R. APP. P. 33.1.

We overrule appellant's first issue in cause number 01-14-00744-CR.

21

## Conclusion

We affirm the judgments of the trial court.


Terry Jennings
Justice

Panel consists of Justices Jennings, Bland, and Brown.

Do not publish.   TEX. R. APP. P. 47.2(b).